INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1228, AFL–CIO, Plaintiff, Appellant,

v.

WNEV–TV, NEW ENGLAND TELEVISION CORP., Defendant, Appellee.

No. 85–1347.

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1985.

Decided Nov. 27, 1985.

Joseph G. Sandulli with whom Sandulli & Grace, Boston, Mass., was on brief for plaintiff, appellant.

Laurence S. Fordham and John D. Leubsdorf with whom Kilburn, Fordham & Starrett, Boston, Mass., were on brief for defendant, appellee.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This case is before us on appeal from a final order denying a petition to compel arbitration.

## I

Appellant, International Brotherhood of Electrical Workers, Local 1228, AFL–CIO (IBEW), a labor organization that represents certain technicians employed by appellee, WNEV–TV, New England Television Corporation (WNEV–TV), brought an action against WNEV–TV pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, seeking to compel arbitration of a dispute that IBEW alleged arose under the terms of a collective bargaining agreement in effect between IBEW and WNEV–TV. The specific grievance that IBEW sought to arbitrate was "whether [WNEV–TV] violated [the] collective bargaining agreement by eliminating an employee lounge."

The lounge in question, referred to in shop parlance as the "Technicians' Lounge," had been in existence and was used by the employees represented by IBEW from April 1982, when WNEV–TV began using its facilities, until its unilateral elimination by WNEV–TV in mid-April 1984. Prior to the removal of the lounge, IBEW tried to bring the issue before the grievance committee, first alleging past

practice[1] as basis for its position, and later pointing to various provisions in the collective bargaining agreement to support its allegations. WNEV–TV countered that the maintenance of the lounge was not required by any provision of the contract and thus the dispute could not be grieved. Upon the refusal to submit the question to arbitration by WNEV–TV, IBEW brought the present suit to compel said procedure. The district court framed the issue as "whether the Agreement requires maintenance of the Technician's Lounge." It proceeded to discuss the various contractual provisions that IBEW alleged were supportive of this requirement[2] and to conclude that, although "plaintiff's analysis appears to create an issue sufficiently substantial to require submission to an arbitrator, the contract provisions themselves do not support plaintiff's interpretation." It further concluded that "the cited articles do not create a duty to maintain a technician's lounge, even under the most liberal interpretation." The court granted summary judgment in favor of WNEV–TV. Because we conclude that the district court has over-extended itself in considering and deciding the merits of the underlying dispute, a function that is outside its powers in § 301 suits to compel arbitration, we reverse.

In the now-famous Steelworkers Triology cases the Court in *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), set out the parameters of a court's role in deciding issues of arbitrability:

The function of the court is *very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator.* It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator....

*The courts,* therefore, *have no business* weighing the merits of the grievance, considering whether there is equity in a particular claim, or *determining whether there is particular language in the written instrument which will support the claim.* The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.[6]

(Emphasis supplied. Footnote 5 omitted).

In footnote 6, the court made reference to Archibald Cox's article, *Current Problems in the Law of Grievance Arbitration,* 30 Rocky Mt.L.Rev. 247, 261 (1958) in which he wrote:

The typical arbitration clause is written in words which cover, without limitation, all disputes concerning the interpretation or application of a collective bargaining agreement. Its words do not restrict its scope to meritorious disputes or two-sided disputes, still less are they limited to disputes which a judge will consider two-sided. Frivolous cases are often taken, and are expected to be taken, to arbitra-

**1.** By "past practice" is meant in labor relations jargon that custom and usage of the shop have established certain acquired rights or conditions of employment. This is a provision that may be incorporated into specific contractual language. *See* Harold S. Roberts, *Roberts' Dictionary of Industrial Relations,* BMA Incorporated, Washington, D.C. (1966), p. 307. *See also* Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1500 (1959). No such specific clause exists in the present controversy, however.

**2.** The district court referred to the following contract provisions as being alleged by IBEW as prohibiting elimination of the Technician's

Lounge: *Recognition* (Article 1.02) (IBEW alleged that it had the right to organize and bargain, and that this employee lounge was an important element of this process; it claimed that unilateral elimination of this condition violated the right to bargain collectively); *Stewards and Inspection* (Articles 3.03 and 3.04) (IBEW claimed that the existence of the lounge was critical to the stewards' operation); *Meal Periods* (Articles 5.06 and 6.03) (IBEW claimed the lounge was a critical aspect of the meal period); *Reasonable Rules* (Article 8.05(b)) (IBEW claimed that the elimination of the lounge was not a "reasonable" rule).

tion. What one man considers frivolous another may find meritorious, and it is common knowledge in industrial relations circles that grievance arbitration often serves as a safety valve for troublesome complaints. Under these circumstances it seems proper to read the typical arbitration clause as a promise to arbitrate every claim, meritorious or frivolous, which the complainant bases upon the contract. The objection that equity will not order a party to do a useless act is outweighed by the cathartic value of arbitrating even a frivolous grievance and by the dangers of excessive judicial intervention.

 The arbitration clause here in question is precisely the type of clause referred to by Justice Douglas in *American Mfg.* and by Archibald Cox in his article. Articles 3.01 and 3.02 of the collective bargaining agreement provide for a grievance and arbitration procedure to resolve:

*All* complaints, disputes or questions as to the interpretation, application or performance of this agreement which are not adjusted between the Employer and the representative of the Union....

(Emphasis supplied). Once the district court made the threshold finding that plaintiff's claims "appear[ed] to create an issue sufficiently substantial to require submission to an arbitrator," its judicial function was at an end. When it proceeded to find that the "contract provisions themselves [did] not support plaintiff's interpretation [and that] the cited articles [did] not create a duty to maintain a technician's lounge," it entered the proscribed area of "determining whether there is particular language in the written instrument which will support the claim." *American Mfg. Co., supra,* 363 U.S. at 568, 80 S.Ct. at 1346. The issue as stated by the district court should not have been "whether the Agreement requires maintenance of the Technician's Lounge" but rather whether the claim is a complaint, dispute or question as to the interpretation, application or performance of the collective bargaining contract. That it unquestionably is, irrespective of what the outcome of the merits of IBEW's claim may be. Our ruling today, of course, ex-

presses no views as to how the issues should be decided by the arbitrator. We merely resolve that, in keeping with a clearly established national labor policy favoring the arbitration of disputes, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute [,d]oubts should be resolved in favor of coverage," *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* — U.S. —, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). Any doubts in this case, even if we were to conclude that IBEW's claims are frivolous, require that the matter be decided by an arbitrator in the first instance. *See Mobil Oil v. Local 8-766 Oil Chemical and Atomic Workers,* 600 F.2d 322 (1st Cir.1979); *Camden Indus. Co. v. Carpenters Local 1688,* 353 F.2d 178, 180 (1st Cir.1965). This result is in keeping with the "strong presumption favoring arbitrability." *Nolde Bros. v. Bakery & Confectionery Workers,* 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977). *See also generally* Smith & Jones, *The Impact of the Emerging Federal Law of Grievance Arbitration on Judges, Arbitrators, and Parties,* 52 Va.L.Rev. 831 (1966); Smith & Jones, *The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law,* 63 Mich.L.Rev. 751 (1965); McDermott, *Arbitrability: The Courts versus the Arbitrator,* 23 Arb.J. 18 (1968); Note, *Judicial Review of Labor Arbitration Awards After the Triology,* 53 Cornell L.Rev. 136 (1967).

The company says that there are no doubts in this case because the arbitration clause permits arbitration only of grievable matters, and this one was not grievable because the grievance procedure required written specification of "the sections of the contract claimed to have been violated," and there were no sections cited, but only "past practice." It has been held that a contract may be found to incorporate past practice even though not mentioned. *See Warrior & Gulf,* ante, 363 U.S. at 581–82,

80 S.Ct. at 1352–53 ("industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."); *Edward Hines Lumber Co. v. Lumber & Sawmill Workers Local No. 2588,* 764 F.2d 631 (9th Cir.1985); *Local No. 702, IBEW v. Central Ill. Pub. Serv. Co.,* 324 F.2d 920 (7th Cir.1963). In *Warrior & Gulf* the Court further said, 363 U.S. at 585, 80 S.Ct. at 1354, "In the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim can prevail." Under this test we will not hold that the quoted provision, as matter of law, excluded past practice from grievability.

In this case this view is reinforced by the all-inclusive language of the no strike clause. In Section 5.18 of the collective bargaining agreement IBEW has bound itself not to engage in any "work actions, strikes (whether sympathetic or otherwise), picketing, boycotting, or any other interference" against WNEV–TV. As admitted in oral argument there is no question but that this provision constitutes a waiver by IBEW, and the employees that it represents, to engage in concerted activities against WNEV–TV during the life of this agreement, including by reason of the Technician's Lounge grievance. In fact, under Section 5.18(a), WNEV–TV "may impose any disciplinary action, including discharge" upon any employee by reason of such activities. The impact of this situation is self-evident. "There is no exception in the 'no strike' clause and none therefore should be read into the grievance clause, since one is the *quid pro quo* for the other." *American Mfg. Co., supra,* 363 U.S. at 567, 80 S.Ct. at 1346; *Warrior & Gulf,* 363 U.S. at 583, 80 S.Ct. at 1353.

II

Thus far we have been dealing with issues of substantive arbitrability, *e.g.,* whether the subject matter of the dispute is arbitrable. *See generally,* Elkouri & Elkouri, *How Arbitration Works,* Bureau of National Affairs, Inc., Washington, D.C. (1985), at pp. 212–21.

Appellee also raises an issue related to procedural arbitrability, *e.g.,* whether the procedures required by the contract to present a grievance have been properly followed. Appellee claims that the alleged contractual violation was not made within the 30–day period established by the Section 3.01 of the collective bargaining contract. In view of the fact that arbitrability, vel non, must be determined initially by the court, *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), we might have some difficulty in thinking failure to file was a mere procedural matter for the arbitrator, *John Wiley & Sons v. Livingston,* 376 U.S. 543, 555–58, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964) if the union had filed no demand of any kind within the 30 days. However, it did file within 30 days, and sometime thereafter sought to amend by adding references to various sections of the contract. Whether these two steps constituted impermissible procedure is surely a question for the arbitrator if he decides that the original grievance phraseology was insufficient.

*Reversed and remanded for action consistent with this opinion.*