**BECHTEL CONSTRUCTION, INC.,**
**Petitioner, Appellant,**

**v.**

**LABORERS' INTERNATIONAL UNION**
**OF NORTH AMERICA, AFL–CIO,**
**Respondent, Appellee.**

**No. 86–1846.**

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1987.

Decided Feb. 25, 1987.

Thomas J. Grooms, with whom Larry P. Malfitano and Bond, Schoeneck & King, Syracuse, N.Y., were on brief, for petitioner, appellant.

Paul F. Kelly with whom Shelley B. Kroll and Segal, Roitman & Coleman, Boston, Mass., were on brief, for respondent, appellee.

Before COFFIN and SELYA, Circuit Judges, and GIGNOUX,* Senior District Judge.

GIGNOUX, Senior District Judge.

Petitioner-appellant Bechtel Construction, Inc. ("Bechtel") filed a petition in the District Court of Massachusetts for a permanent stay of arbitration pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982), and the United States Arbitration Act, 9 U.S.C. §§ 1–14. Respondent-appellee Laborers' International Union of North America, AFL–CIO (the "International") counterclaimed for an order compelling arbitration. The district court, finding that both the underlying dispute and Bechtel's defenses to arbitration were arbitrable, denied Bechtel's petition for a permanent stay of arbitration without acting on the International's counterclaim. Bechtel appeals from the district court's order, contending (1) that the district court erred in concluding that the parties had agreed to arbitrate the dispute and (2) that the district court erroneously refused to rule on the merits of Bechtel's defenses to arbitration. We affirm.

I.

Bechtel and the International are parties to a collective bargaining agreement known as the General Presidents' Project Maintenance Agreement ("GPPMA") in connection with work performed by International members at Boston Edison's Pilgrim nuclear power plant in Plymouth, Massachusetts. The laborers employed by Bechtel at Pilgrim are members not only of the International but also of Laborers' Local 721 ("Local 721"), an affiliate of the International. Although the International rather than Local 721 is the GPPMA signatory,

the laborers at Pilgrim are referred out of the Local 721 hiring hall, and the Local 721 Business Manager, Louis Palavanchi, Jr., served as the laborers' jobsite representative, with rights of jobsite access, pursuant to Article XI of the GPPMA.

In June 1985, after Palavanchi allegedly instigated strikes by laborers at the Pilgrim plant, Bechtel notified the International that Palavanchi would no longer be recognized as the laborers' jobsite representative and would not be granted access to the job site. Bechtel requested that the International designate a new representative. Local 721 filed an unfair labor practice charge with the National Labor Relations Board, but the Board refused to issue a complaint. Thereafter, on October 8, 1985, the International filed a grievance, pursuant to Article VII of the GPPMA,[1] that challenged Bechtel's denial of jobsite access to Palavanchi. The grievance progressed through Steps I and II of the grievance procedure.

On March 12, 1986, the International and Bechtel entered into an agreement (the "March 12 agreement") addressing various problems at the Pilgrim jobsite. The agreement provided in pertinent part:

1. Effective Monday, March 17, 1986, employees represented by Laborers Local 721 at the Pilgrim Nuclear Station are placed under the jurisdiction of the International Union for the duration of the [Bechtel] contract with Boston Edison unless this understanding is vacated by mutual consent of both parties. The International Union will designate an International Representative who will act as the representative for the Union.

---

* Of the District of Maine, sitting by designation.

1. Article VII of the GPPMA establishes a four-step grievance procedure. Step I requires discussions "[b]etween the aggrieved employee and/or the on-site Representative and the employees' immediate on-site Staff Supervisor." Step II requires discussion "[b]etween an International Union Representative, the Local Union Representative and the Labor Relations Manager of the Contractor." Step III requires that

"[i]f the grievance is not satisfactorily settled [at] step II," the "General Presidents' Committee and the Contractors' representative shall consider the grievance," although this step is waivable by mutual consent of the parties. (The General Presidents' Committee is comprised of the presidents of the twelve International unions that are GPPMA signatories.) Step IV requires submission to an impartial arbitrator.

2. Effective March 17, 1986, Local Union 721 will no longer have any relationship with the Pilgrim Project and representatives will no longer have any responsibilities toward the project.

3. It is understood that all references in the G.P.P.M.A. that refer to "local union" and "local union representatives" are hereby replaced by "International Union" and "International Union Representatives."

The agreement also expressly provided that Bechtel and Local 721 would withdraw legal actions that each was then pursuing against the other.

On March 31, 1986 the International wrote to the GPPMA Administrator requesting that he submit the Palavanchi jobsite access grievance to the General Presidents Committee and a Bechtel representative in accordance with Step III of the grievance procedure. The Administrator determined, however, that in view of the March 12 agreement "it would not be appropriate to submit this issue" to the General Presidents' Committee; the Administrator suggested that the International and Bechtel "exercise some other procedure, such as binding arbitration, to vacate" the March 12 agreement, if that was the International's desire. Thereafter, on June 16, 1986, the International attempted to process the grievance to Step IV by filing a demand for arbitration with the American Arbitration Association.

On July 11, 1986, Bechtel petitioned the district court for a permanent stay of arbitration, arguing that the March 12 agreement constituted an agreement not to arbitrate the Palavanchi jobsite access grievance. Bechtel also raised three defenses to arbitration, two of which are at issue in this appeal. First, Bechtel argued that the March 12 agreement completely resolved the grievance, leaving nothing to arbitrate. Second, Bechtel argued that the grievance had not been properly processed through Step III (consideration by the General Presidents' Committee and a Bechtel representative) and thus could not proceed to Step IV (arbitration). On August 9, 1986, the district court denied the petition, concluding that both the underlying grievance and Bechtel's defenses to arbitration were arbitrable. We consider in turn Bechtel's challenges to each of these conclusions.

## II.

In the recent case of *AT & T Technologies, Inc. v. Communication Workers,* ——— U.S. ———, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court reaffirmed the four basic principles governing courts and labor arbitrators that were first announced more than twenty-five years ago in the *Steelworkers Trilogy: Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). First, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies,* 106 S.Ct. at 1418 (quoting *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353). Second, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate a particular grievance—is undeniably an issue for judicial determination." *Id.* Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." 106 S.Ct. at 1419. Finally, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1353). " '[I]n the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Id.* (quoting

*Warrior & Gulf,* 363 U.S. at 584–85, 80 S.Ct. at 1354).

■ Bechtel does not argue that any express provision of the GPPMA excludes the instant grievance from arbitration. Bechtel instead asserts that the March 12 agreement constitutes "the most forceful evidence of a purpose to exclude the claim from arbitration." The district court implicitly rejected this argument in finding that the grievance was arbitrable, and we agree.

We are loath to interpret the March 12 agreement as "the most forceful evidence" of a purpose to exclude the Palavanchi jobsite access grievance from arbitration, because the March 12 agreement expressly mentions neither Palavanchi nor jobsite access nor any grievance nor arbitration. That the parties here knew how to resolve a particular dispute without recourse to a neutral decision-maker is amply demonstrated by other provisions of the March 12 agreement that expressly bound Bechtel and the Local to withdraw legal actions each had pending against the other. In view of the parties' failure to address in equally explicit terms the grievance here at issue, the March 12 agreement hardly provides forceful evidence that the arbitrability of that grievance was even considered.

We have in the past been guided by the dictate of *Warrior & Gulf,* 363 U.S. at 585, 80 S.Ct. at 1354, which cautioned against "becom[ing] entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause." *See Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic Workers,* 600 F.2d 322, 329–30 (1st Cir.1979) (rejecting use of prior bargaining history in determining arbitrability). Because the March 12 agreement does not so much as mention arbitrability, we are left without even a back door through which to interpret that agreement

(were we permitted to do so) and decide whether it addresses Palavanchi's right of jobsite access under the GPPMA. The district court properly left to the arbitrator the interpretation of the March 12 agreement and its exact relationship to the GPPMA.

## III.

■ Bechtel next contends that the district court erred in refusing to rule on Bechtel's defenses to arbitration. Bechtel's first defense was that the March 12 agreement completely resolved the grievance, leaving nothing to arbitrate. But to have ruled on this defense would have required the district court to "become entangled in the construction of the substantive provisions of a labor agreement," in contravention of the command of *Warrior & Gulf,* 363 U.S. at 585, 80 S.Ct. at 1354. As noted, the March 12 agreement does not expressly mention Palavanchi, his grievance, or the issue of jobsite access. The question whether the agreement's reference to the Local representative's "responsibilities toward the [Pilgrim] project" bears on Palavanchi's right of jobsite access under the GPPMA is exactly the kind of question as to which an arbitrator's expertise exceeds that of a court.[2]

Bechtel's second defense to arbitration was that the grievance had not been properly processed through Step III (consideration by the General Presidents' Committee and a Bechtel representative) and thus could not proceed to Step IV (arbitration). But the effect if any to be given to the Administrator's refusal to submit the grievance to the Committee is a classic question of "procedural arbitrability" for the arbitrator to decide. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 555–59, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964); *Electrical Workers, Local 1228 v. WNEV-TV,* 778 F.2d 46, 49 (1st Cir.1985), *cert.*

---

**2.** Bechtel insists that the failure of the General Presidents' Committee to process the grievance at Step III indicates the Committee's conclusion that the March 12 agreement fully settled the grievance; Bechtel implicitly argues that the district court should have deferred to that conclusion. We first note that the Committee itself reached no such conclusion; the Administrator simply refused to submit the grievance to the Committee. More importantly, the effect if any to be given to the Administrator's refusal to submit the grievance to the Committee is another question far better suited to arbitral than judicial resolution.

*denied,* — U.S. ——, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).[3] The district court was therefore correct in concluding that Bechtel's second defense to arbitration was itself arbitrable.

*The order of the district court is affirmed.*

*Double costs to appellee.*

---

**3.** Bechtel cites *International Union of Electrical, Radio, Machine Workers v. General Electric Co.,* 429 F.2d 412, 413 (1st Cir.1970), for the proposition that the union must make a prima facie showing of procedural arbitrability to the *court* before obtaining an order compelling arbitration. But that case and the case on which it relied, *International Union of Electrical, etc. v. General Electric Co.,* 407 F.2d 253, 259–61 (2d Cir.1968), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1746, 23 L.Ed.2d 217 (1969), both involved a particular and unusual arbitration clause not at all relevant here.