**STRATHMORE PAPER COMPANY,
Plaintiff, Appellant,**

v.

**UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO and United Paperworkers International Union, Local 197, Defendants, Appellees.**

No. 89–1584.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1989.

Decided April 3, 1990.

Richard D. Hayes with whom Jo–Ann W. Davis, Springfield, Mass., was on brief, for plaintiff, appellant.

J. William Gagne, Jr. with whom Harry B. Elliott, Jr., Hartford, Conn., was on brief, for defendants, appellees.

Before TORRUELLA and SELYA, Circuit Judges, and COFFIN, Senior Circuit Judge.

TORRUELLA, Circuit Judge.

On appeal this Court has been requested to review the refusal of the United States District Court for the District of Massachusetts to vacate a labor arbitration award rendered in favor of defendant Union. The issue presented by this appeal, the scope of an arbitrator's authority, continues to reappear before us, *see Georgia Pacific Corp. v. Local 27*, 864 F.2d 940 (1st Cir.1988); *Warren v. United Paperworkers Int'l Union*, 845 F.2d 3 (1st Cir.1988); *International Bhd. of Electrical Workers v. WNEV–TV*, 778 F.2d 46 (1st Cir.1985), notwithstanding the narrow scope of our appellate authority.

Appellant Strathmore Paper Co. ("Employer/Company") challenges the district court's decision on the ground that the arbitrator exceeded the scope of his authority by rendering an opinion which was not based on the collective bargaining agreement ("contract" or "agreement"). 29 U.S.C. § 185. The facts in this case are undisputed and are as follows.

## FACTS

In December of 1982, a dispute arose between an employee and the Company concerning the Company's use of a dump truck. The employee, a member of the Union, objected to the Company's assignment of a millwright to drive the dump truck. As a result of the dispute the employee filed a grievance pursuant to the agreement.

In March of 1983, the Company's employee relations manager agreed to conciliate the matter with the employee, and wrote on the grievance form, *"unless the classified truckdriver is on another 'on the road' assignment the Company will use him for any pickups outside the Company."*

This response satisfied the Union and the matter was not pursued any further. After this conciliation, two successive labor agreements were negotiated. Although other side agreements were incorporated into the collective bargaining agreement, the 1983 settlement was not.

In January of 1987, the subject of controversy settled in March of 1983, arose again between the same parties and a grievance was again filed. The Union claimed that the union member was entitled to operate the dump truck and that the Company had violated the contract by not assigning him to drive the truck, pursuant to the 1983 settlement. This time no agreement was reached and the grievance proceeded to arbitration. At issue was both whether the grievance was arbitrable and whether the 1983 settlement was binding.

The arbitrator found that the second grievance filed in January 1987, was arbitrable under the terms of the agreement, and held for the Union. The arbitrator based his award on the conclusion that there existed a long term Employer's recognition of the driver's entitlement to drive the truck.

Not content with the arbitrator's decision, the Employer filed a complaint with the district court seeking to vacate it. In January 1989, the United States magistrate issued his Report and Recommendation which determined that although the dispute was arbitrable the arbitrator had exceeded his powers under the agreement and recommended that the Court vacate the arbitrator's decision. The Union objected to this conclusion and the district court sustained this objection and declined to vacate the arbitration decision.

## DISCUSSION

It is beyond cavil that in reviewing the decision of an arbitrator, our role is limited. *United Paperworkers v. Misco Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Our review must be guided by the precedent established in the *Steelworkers*

trilogy[1] and its progeny. Thus, the Supreme Court has consistently recognized that "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 36, 108 S.Ct. at 370 (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 at 596, 80 S.Ct. 1358 at 1360, 4 L.Ed.2d 1424). In *Misco* the Court added that in interpreting the language of the contract to identify the authority to arbitrate and the propriety of this determination, the arbitrator must have, at the very least, arguably construed or applied the contract. *Misco*, 484 U.S. at 38, 108 S.Ct. at 371.[2]

Our review in the instant case hinges upon the resolution of three issues. We will first examine the scope and standard of our review. Second, we will analyze the language of the contract and the extent of the arbitrator's authority. Finally, we will determine whether the arbitrator acted within the scope of his authority.

## I. STANDARD OF REVIEW

■ The Supreme Court in discussing the restraint required in judicial review of arbitration decisions has made its position clear.

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract....
>
> The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. *United Steelworkers v.*

*American Mfg. Co.*, 363 U.S. 564, 567–568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

The reasons for the insulation of arbitral decisions from judicial review are grounded in various factors: labor management relations; the preference for private settlement of labor disputes without the intervention of government; and the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, all in furtherance of the national labor policy of peaceful resolution of labor disputes in accord with the parties' objectives. *See Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371–372, 104 S.Ct. 1844, 1848–1849, 80 L.Ed.2d 366 (1984); *Misco*, 484 U.S. at 37, 108 S.Ct. at 370; *AT & T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 649–650, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986).

This limited standard of review has led to the presumption that any doubt concerning the scope of arbitrable issues "require[s] that the matter be decided by an arbitrator in the first instance". As such "this result is in keeping with the 'strong presumption favoring arbitrability.'" *International Bhd. of Electrical Workers v. WNEV–TV*, 778 F.2d at 48. After all, an arbitrator:

> ... is not a public tribunal imposed upon the parties by a superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. He serves their pleasure only to administer the rule of law established by their collective agreement. See Shulman, Reason, Contract, and Law in Labor Relations, 68 Harv.L.Rev. 999, 1016 (1955): *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 581 [80 S.Ct. at 1352];

1. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

2. More recently, this Circuit in *Berklee College of Music v. Berklee Chapter of the Massachusetts Federation of Teachers, Local 4412, AFL–CIO*, 858 F.2d 31 (1st Cir.1988) has held and added that an arbitration award is sustainable when a "plausible argument" can be made favoring the arbitrator's interpretation of the Contract.

*Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 53 n. 16 [94 S.Ct. 1011, 1022 n. 16, 39 L.Ed.2d 147] (1974).

Having established the limited scope of our review the next task of a court asked to compel arbitration or to determine its propriety, is to determine whether the parties agreed to arbitrate that dispute.

## II. THE LANGUAGE OF THE CONTRACT

■ The extent of an arbitrator's authority lies within the language of the contract. An arbitrator does not have unfettered discretion, and may not impose a remedy which directly contradicts the express language of the agreement. Nor can he or she interpret a clause or provision when its language is clear, unequivocal and unambiguous. *Georgia Pacific Corp. v. Local 27,* 864 F.2d at 945.

■ The dispute and the subsequent arbitration at issue in the present appeal arose out of a grievance filed by the employee and the Union under Section 3 of the contract. In pertinent part, the clause reads as follows:

> Should differences arise between the Company and the Union and its members employed by the Company as to the meaning and application of this Agreement, *or should any local trouble of any kind arise in the plant,* there shall be no suspension of operation on account of such differences. . . . (emphasis added).

After providing for a series of steps to be followed, the contract states:

> [The] authority of the arbitrator shall be limited to construing and interpreting rights of the parties under terms of the Agreement. The arbitrator has no power to amend, delete, or add to its terms.

In the instant case, the arbitrator was presented with a question of job classification. Consequently, since job classification is a matter not specifically discussed by the agreement, this Court must initially determine whether the instant dispute is arbitrable, albeit that it is "a local trouble of any kind" arising in the plant as per the language of the agreement. Our task requires that we examine the arbitration clause itself.

### A. *The Arbitration Clause*

The Supreme Court has determined that a presumption of arbitrability exists when a contract contains an arbitration clause. *AT & T Technologies Inc. v. Communications Workers,* 475 U.S. at 650, 106 S.Ct. at 1419. In *AT & T,* the Supreme Court, in a framework analogous to this case, addressed the effect of a broad clause in a labor agreement. The Court held that this presumption is

> particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . ."

*AT & T Technologies Inc. v. Communications Workers,* 475 U.S. at 650, 106 S.Ct. at 1419.

The court continued, again on point with the instant case, by stating that:

> "[i]n such cases, 'in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. at 584–585 [80 S.Ct. at 1354]).

The agreement before us does not expressly exclude the arbitration of job classifications. Furthermore, it is not hard to imagine that since job duties and responsibilities have been consistently recognized as core issues in collective bargaining, the parties could have foreseen the possibility of a dispute arising on this subject, and that it would reach arbitration.

Moreover, it is not unreasonable to conclude that the union, in view of the broad scope of the arbitration clause, could have assumed that any dispute or conflict in that area was in fact arbitrable. It appears this is precisely the purpose of the arbitrability presumption.

At this point, at least with reference to the arbitrator's authority to arbitrate the dispute in question, we need go no further. We cannot allow any party to an agreement to feel that they can have it both ways. Thus, this court agrees with the magistrate and the district court that the arbitrator had authority to act.

## III. THE BOUNDARIES OF THE ARBITRATOR'S AUTHORITY

■ We now turn to the question of whether the arbitrator stayed within the bounds of his authority. The relevance of this analysis becomes apparent when we consider that the principle of deference inevitably gives way, as recognized by the Supreme Court in *Enterprise Wheel*, to the greater principle that an award that does not draw its essence from the agreement is not entitled to judicial enforcement. As such we must determine whether it was proper to use the 1983 settlement agreement, whether the arbitrator is entitled to consider past practices and/or the "law of the shop," and whether the settlement agreement can actually be considered as past practice[3] or the "law of the shop."

There is no doubt that the Supreme Court has instructed that arbitrators cannot ignore the plain language of the labor agreement. *See Misco*, 484 U.S. at 37, 108 S.Ct. at 370. To this effect appellant correctly argues that the contract does not provide an arbitrator with the authority to read into the contract prior settlements. On the contrary, there is specific language in the contract which precludes an arbitrator from deferring to settlements unless they have been expressly incorporated or certain conditions are met. *S.D. Warren Co. v. United Paperworkers*, 845 F.2d 3 (1st Cir.1988) and *Georgia Pacific Corp. v. Local 27*, 864 F.2d 940 (1st Cir.1988).

In *Warren*, we found that the language of the contract was unambiguous and in rendering his award the arbitrator had specifically ignored its plain language. The

contract in that case provided predetermined remedies, there was no ambiguity and there was no basis for an arbitrator to "fill an empty space" with his expertise. Instead, the arbitrator altered the contract and substituted for it his own "brand of industrial justice".

By contrast, in the case at bar, the contract does not contain job classifications; thus it is ambiguous as to the arbitrator's authority to resolve job classifications disputes. In fact, given the broad arbitration clause, and hence the arbitrability of the dispute, and the fact that there were no remedies for the grievance filed, we are led to the belief that the language of the agreement here is substantially more open, or ambiguous than the language at issue in *Warren*. *See Crafts Precision Industries, Inc. v. Lodge No. 1836 of District 38*, 889 F.2d 1184 (1st Cir.1989). Moreover, the award in the instant case was not a substitution as in the *Warren* case. In this case, the parties did not agree contrary to the arbitrator's final award. We find that the arbitrator's intervention was proper.

### A. The 1983 settlement agreement

Appellants contend that the contract unambiguously states that it shall supersede all previous written agreements unless expressly incorporated into the contract. They aver that the situation at bar must be seen in light of the *Georgia Pacific* case particularly where it states that: "[i]f the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Georgia Pacific Corp. v. Local 27*, 864 F.2d at 944. Thus, they argue that by using the prior settlement in submitting its award, the arbitrator was acting patently in excess of his arbitral authority.

Appellant stopped short in reading *Georgia Pacific*. In that same case, this Court went on to find that:

---

**3.** We have previously stated that by "past practice" is meant in labor relations jargon, that customs and usage of the shop have established certain acquired rights or conditions of employment. This is a provision that *may be incorpo-*

rated into specific contractual language. *See* Harold S. Roberts, *Roberts' Dictionary of Industrial Relations* (quoted at *Intern. Broth. of Electrical Workers v. WNEV-TV*, 778 F.2d at 47 n. 1).

"[t]o be binding, a trade custom or usage must be so well known, uniform, long established and generally acquiesced to in so as to induce the belief that the parties contracted with reference to it, nothing in the contract to their contrary. *Georgia Pacific*, 864 F.2d at 946 (quoting *Dahly Tool Co. v. Vermont Tap & Die Co.*, 742 F.2d 311, 314 (7th Cir.1984)). This statement would allow the arbitrator, as alleged by the appellees, to consider past practices and/or trade custom. Moreover, it has been held that a contract may be found to incorporate past practice even though not mentioned. *International Bhd. of Electrical Workers v. WNEV–TV, New England*, 778 F.2d at 48 (1st Cir. 1985). (Industrial common law—the practices of the industry and the shop, is equally a part of the collective bargaining agreement although not expressed in it. *Id.* (quoting *Warrior & Gulf, ante*, 363 U.S. at 576, 80 S.Ct. at 1349–1350)).

Appellants seek to avoid these principles by averring that the facts fail to support a finding of a "past practice". Whether or not the 1983 settlement agreement established a "past practice" as described in *Georgia Pacific*, we agree with the district court that the arbitrator was entitled at least to factor the agreement into his decision interpreting the contract.

Although the contract does not explicitly incorporate or refer to the settlement agreement, it also evidences no intent to exclude the contents of the agreement as a basis for an arbitrator's exercise of his discretion. We therefore see no reason why the arbitrator should be prevented from considering the agreement as some evidence "that there were certain distinct duties assigned millwrights and truck drivers," District Court Opinion at 5. In addition, we note that the agreement was not the only evidence considered by the arbitrator; his decision also points to the absence of any change since the 1983 agreement in the company's use of its trucks.

In *Electrical Workers*, we provided that "... [i]n the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim can prevail." *International Bhd. of Electrical Workers v. WNEV–TV*, 778 F.2d at 49. Although, the 1983 settlement was expressly excluded, as we have stated before, this does not necessarily means the content of the settlement is not grievable. Thus, since we do not find a forceful purpose to exclude the specific contents of the settlement agreement or the claim, we see no reason why the arbitrator should be prevented from considering the agreement as some evidence of recognized assigned duties.

## CONCLUSION

There is no doubt in our minds, in view of our discussion, that the arbitrator's determination and his authority were derived from the essence of the contract. Finally, we find proper to conclude as the Supreme Court did in *Misco*, that "as long as the arbitrator is construing or applying the contract and acting within the scope of his authority," even when the court is convinced he committed serious error, it cannot overturn his decision.

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. *Enterprise Wheel & Car Corp.*, 363 U.S. at 597 [80 S.Ct. at 1361]. *See Centralab Inc. v. Local 816*, 827 F.2d 1210 (8th Cir.1987); *Misco*, 484 U.S. 29 [108 S.Ct. 364].

All said, and in light of the limited review standard, we agree with the district court and affirm its conclusion.

*Affirmed.*