UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1031

LOCAL 285, SERVICE EMPLOYEES
INTERNATIONAL UNION, AFL-CIO,

Plaintiff - Appellant,

v.

NONOTUCK RESOURCE ASSOCIATES, INC.,

Defendant - Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Bownes, Senior Circuit Judge, 

and Stahl, Circuit Judge. 



David B. Rome, with whom Lois Johnson, Angoff, Goldman, 
Manning, Pyle, Wanger & Hiatt, P.C., were on brief for appellant. 
Albert R. Mason for appellee. 



August 31, 1995


TORRUELLA, Chief Judge. Local 285, Service Employees TORRUELLA, Chief Judge. 

International Union, AFL-CIO, CLC ("the Union"), submitted

grievances for two discharged employees, Justin Onanibaku (the

"Onanibaku grievance") and Mildred Singh (the "Singh grievance"),

pursuant to the grievance/arbitration procedure contained in its

collective bargaining agreement with Nonotuck Resource

Associates, Inc. ("the Company"). The Union alleged that both

employees were discharged without "just cause." The Company

refused to submit to arbitration, maintaining that neither

grievance was arbitrable under the collective bargaining

agreement. The Union then filed the instant action in the United

States District Court for the District of Massachusetts, pursuant

to 301 of the Labor Management Relations Act, 29 U.S.C. 185

(1982), to compel the Company to arbitrate both grievances. Upon

cross-motions for summary judgment, the district court ordered

the Company to arbitrate the grievances, and rejected both

party's motions for attorneys' fees. The Union appeals the

denial of its request for attorneys' fees.1 We affirm the

denial of attorneys' fees with respect to one of the grievances,

reverse the denial of attorneys' fees with respect to the other

grievance, and remand the case to the district court for the

calculation of fees.

DISCUSSION DISCUSSION

 

1 The Company does not appeal the district court's decision that
the grievances are arbitrable.

-2-

In deciding not to award the Union its attorneys' fees,

the district court reasoned that "even though [the Company's]

contentions fell short -- a good faith dispute existed as to the

proper venue for this case." We review the district court's

decision only for "abuse of discretion." Crafts Precision 

Indus., Inc. v. Lodge No. 1836, Int'l Assoc. of Machinists, 889 

F.2d 1184, 1186 (1st Cir. 1989).

A. The Proper Standard A. The Proper Standard 

As an initial matter, the Union argues that the

district court analyzed the question of attorneys' fees under an

improper standard. The Union argues that the court's use of the

phrase "good faith dispute" indicates that it improperly required

the Union to show bad faith on the part of the Company as a

prerequisite to a fee award. The Union maintains that, under the

proper standard, all it needed to show was that the Company's

refusal to arbitrate was objectively "without justification"

under the terms of the collective bargaining agreement and

controlling law, and that the Company's subjective good faith is

therefore irrelevant. The Company, on the other hand, argues

that the district court correctly applied a bad faith test.

Under the so-called "American Rule," absent an

authorizing statute or contractual commitment, litigants

generally bear their own costs. Aleyska Pipeline Co. v. 

Wilderness Soc'y, 421 U.S. 240, 257 (1974). One of the 

exceptions to this rule, however, is that a court may award the

prevailing party its attorney's fees if it determines that the

-3-

losing party has "acted in bad faith, vexatiously, or for

oppressive reasons . . . ." Id. at 258-59 (quoting F.D. Rich Co. 

v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 

(1974)). See also Cote v. James River Corp., 761 F.2d 60, 61 

(1st Cir. 1985). "[T]he term 'vexatious' means that the losing

party's actions were 'frivolous, unreasonable, or without

foundation, even though not brought in subjective bad faith.'"

Washington Hosp. Ctr. v. Service Employees Int'l Union, 746 F.2d 

1503, 1510 (D.C. Cir. 1984) (quoting Christiansburg Garment Co. 

v. EEOC, 434 U.S. 412, 421 (1978)). See also Crafts Precision, 

889 F.2d at 1186.

It is clear, therefore, that contrary to the Company's

assertions, subjective bad faith is not a prerequisite to a fee

award. Moreover, contrary to the Union's suggestions, we think

that the district court's citation to Courier-Citizen Co. v. 

Boston Electrotypers Union No. 11, 702 F.2d 273, 282 (1st Cir. 

1983), which recites a "without justification" test, indicates

that the court understood the proper standard, and merely used

the term "good faith dispute" to refer to what it considered an

objectively and subjectively reasonable dispute between the

parties over the interpretation of the collective bargaining

agreement and controlling law. We therefore reject the Union's

argument that the district court applied an improper standard of

review.

B. The Two Grievances B. The Two Grievances 

-4-

The Company refused to arbitrate either grievance on

the grounds that they were not arbitrable under the terms of the

collective-bargaining agreement. The question on appeal is

whether either or both of the grievances were so clearly subject

to arbitration under the collective bargaining agreement and

controlling law that we can say that the district court abused

its discretion in concluding that the Company's refusal to submit

to arbitration was not frivolous, unreasonable, or without

justification.

We begin by recognizing the general rule that when a

collective bargaining agreement contains an arbitration clause,

such as the one in this case, "a presumption of arbitrability [is

created] in the sense that '[a]n order to arbitrate the

particular grievance should not be denied unless it may be said

with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted

dispute. Doubts should be resolved in favor of coverage.'" AT & 

T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 

643, 650 (1986) (quoting Steelworkers v. Warrior & Gulf 

Navigation Co., 363 U.S. 574, 582-83 (1960)). It is also true, 

however, that "arbitration is a matter of contract and a party

cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." Id. at 648 (quoting Warrior & 

Gulf, 363 U.S. at 582). 

1. The Onanibaku Grievance 1. The Onanibaku Grievance 

-5-

The Company argued on summary judgment that the

Onanibaku grievance was not arbitrable under the collective-

bargaining agreement because Onanibaku alleged that his

discipline was discriminatorily motivated. Article 5 of the

collective bargaining agreement provides that "[n]o dispute

regarding alleged discrimination shall be subject to grievance or

arbitration unless no remedy therefore is provided by State or

federal law." The Union argues that the Company's position was

without justification because the terms of the grievance filed by

the Union on behalf of Onanibaku alleged merely that he was

discharged without just cause; it did not mention discrimination.

The Union points out that, as the certified bargaining

representative, the labor organization, not the employee, is the

master of the grievance. See Republic Steel Corp. v. Maddox, 379 

U.S. 650, 653 (1965) (union has no duty to pursue unmeritorious

grievances); Miller v. United States Postal Serv., 985 F.2d 9, 12 

(1st Cir. 1993). The Union also points out that it wrote the

Company a letter specifically stating that it was not alleging

discrimination.

We think the district court acted within its discretion

in concluding that the Company's defense to the arbitrability of

the Onanibaku grievance was not so frivolous, unreasonable, or

without justification as to warrant imposition of attorneys'

fees. The fact is that Onanibaku alleged, prior to the filing of

the grievance, that his discipline was discriminatorily

motivated. Moreover, he filed a charge with the Massachusetts

-6-

Commission Against Discrimination, and filed civil rights

complaints with the Northampton Police, alleging that the

disciplinary action was discriminatorily motivated. Under these

circumstances, we do not find it so unreasonable for the Company

to assert the position that a claim of discrimination was at the

heart of the Onanibaku grievance, and that the grievance was

therefore not arbitrable. This was an issue of "substantive

arbitrability," thesignificance ofwhich weshall presentlydiscuss.

2. The Singh Grievance 2. The Singh Grievance 

The Company refused to arbitrate the Singh grievance on

the grounds that it was not filed within the time limits

established in Article 20 of the collective bargaining agreement.

Article 20 provides that any grievance must be presented to the

employee's appropriate supervisor "no later than fifteen (15)

calendar days following the date of the grievance or the

Employee's knowledge of its occurrence." Article 20 also

provides: "The time limits provided in this article are

conditions precedent for the filing and processing of grievances

under this Article." The district court held that the Singh

grievance was arbitrable, reasoning that "because an

'untimeliness' defense is a classic case of procedural 

arbitrability that should be decided by the arbitrator, [the

Company's] contention to the contrary will prove unsuccessful."

(emphasis added). Again, the court declined to award the Union

its attorneys' fees. Our discussion of this issue must begin

with the distinction between "substantive arbitrability" and

-7-

"procedural arbitrability." Substantive arbitrability refers to

whether a dispute involves a subject matter that the parties have

contractually agreed to submit to arbitration. See International 

Bhd. of Elec. Workers, Local 1228, AFL-CIO v. WNEV-TV, New Eng. 

Television Corp., 778 F.2d 46, 49 (1st Cir. 1985). For example, 

the Onanibaku grievance raised a matter of substantive

arbitrability -- the parties to the collective bargaining

agreement specifically agreed not to arbitrate grievances

alleging discrimination. Thus, the question for the district

court was whether the Onanibaku grievance alleged discrimination.

Procedural arbitrability, on the other hand, concerns such issues

as to "whether grievance procedures or some part of them apply to

a particular dispute, whether such procedures have been followed

or excused, or whether the unexcused failure to follow them

avoids the duty to arbitrate." John Wiley & Sons v. Livingston, 

376 U.S. 543, 557 (1964). See also Beer Sales Drivers, Local 744 

v. Metropolitan Distribs., Inc., 763 F.2d 300, 302-03 (7th Cir. 

1985). In John Wiley, the Supreme Court established that issues 

of substantive arbitrability are for the court to decide, and

issues of procedural arbitrability are for the arbitrator to

decide. "Once it is determined [by a court] that the parties are

obligated to submit the subject matter of a dispute to

arbitration, 'procedural' questions which grow out of the dispute

and bear on its final disposition should be left to the

arbitrator." 376 U.S. at 557.

-8-

Thirty years of Supreme Court and federal circuit court

precedent have established that issues concerning the timeliness

of a filed grievance are "classic" procedural questions to be

decided by an arbitrator, a description appropriately adopted by

the district court. See supra p.7. Unfortunately, the district 

court failed to properly apply the consequences of this

description. Because the law is clear on this issue, and has

been for some time, the Company was without justification in

refusing to arbitrate the Singh grievance, and in forcing the

Union to litigate its arbitrability in federal district court.

We conclude that the district court abused its discretion in

holding to the contrary.

The Company argues that the timeliness requirement was

a bargained-for "condition precedent" to arbitration and

therefore that it is for the court to decide whether the parties

intended to arbitrate this particular grievance. In support of

this argument, the Company notes the Supreme Court's statement

that "[i]n the absence of any express provision excluding a

particular grievance from arbitration, . . . only the most

forceful evidence of a purpose to exclude the claim from

arbitration can prevail." AT & T Technologies, 475 U.S. at 650 

(quoting Warrior & Gulf, 363 U.S. at 584-85). The Company argues 

that this is a case of an express provision excluding a

particular grievance from arbitration, and maintains that to

conclude otherwise is to deprive the Company of the benefits of

its bargain.

-9-

The Company's position misapprehends the distinction

between substantive and procedural arbitrability. In John Wiley, 

the employer maintained that it had no duty to arbitrate because:

(1) the collective bargaining agreement set out a three-step

grievance procedure, and the first two steps had not been

followed, 376 U.S. at 555-56; and (2) the union allegedly failed

to comply with the following provision of the agreement: "Notice

of any grievance must be filed with the Employer and with the

Union Shop Steward within four (4) weeks after its occurrence or

latest existence. The failure by either party to file the

grievance within this time limitation shall be construed and be

deemed to be an abandonment of the grievance." Id. at 556 n.11. 

As noted, the Court held that once it is determined that the

parties are obligated to arbitrate the subject matter of the

dispute, then any procedural questions growing out of the dispute

and bearing on its final disposition should be left to the

arbitrator. Id. at 557. 

The John Wiley Court reasoned that, because the role of 

a reviewing court is only to determine whether the subject matter

of the dispute is arbitrable under the agreement, and not to rule

on the merits of the dispute, and because procedural questions

are often inextricably bound up with the merits of the dispute,

procedural questions should be decided by the arbitrator along

with the merits. See id. at 557. 

There is no principled distinction between the timing

issue deemed procedural in John Wiley and the timing issue in 

-10-

this case. Both are "conditions precedent" to arbitration; but

the fact that something is a condition precedent to arbitration

does not make it any less a "'procedural' question[] which

grow[s] out of the dispute and bear[s] on its final disposition .

. . ." The dispute in this case concerns whether Singh was fired

without just cause -- a cause of action clearly covered by the

arbitration clause contained in the agreement. The Company's

timeliness defense is merely a procedural question arising out of

that dispute.

Supreme Court and circuit court cases demonstrate that

this rule is clear and well-established. For example, in

International Union of Operating Eng'rs v. Flair Builders, Inc., 

406 U.S. 487 (1972), the Supreme Court held that once the court

determines that the subject matter of a dispute is covered by the

collective bargaining agreement, then a claim by one of the

parties that the particular grievance is barred by the equitable

defense of laches is a question for the arbitrator to decide.

Id. at 491-92. Similarly, in Trailways v. Amalgamated Ass'n of 

Street, Elec. Ry. & Motor Coach Employees, 343 F.2d 815 (1st 

Cir.), cert. denied, 383 U.S. 879 (1965), this court rejected the 

employer's argument that the union failed to file certain

grievances within the time conditions imposed by the collective

bargaining agreement. We cited John Wiley for the proposition 

that: "The company's contention that the union failed to file the

grievances relating to discharge of the employees within the

requisite time limits, is without merit. It can raise that

-11-

defense before the arbitrator but not before this court." Id. at 

818. See also Bechtel Constr., Inc. v. Laborers' Int'l Union, 

812 F.2d 750, 753 (1st Cir. 1987) (failure to submit grievance to

committee, as required by step grievance procedure, is "a classic

question of 'procedural arbitrability' for the arbitrator to

decide").

The employer in Chauffeurs, Teamsters & Helpers, Local 

Union 765 v. Stroehmann Bros. Co., 625 F.2d 1092 (3d Cir. 1980), 

made an argument almost identical to that of the Company in this

case. The employer argued that a grievance was not arbitrable

because the submission to the American Arbitration Association

was untimely, and maintained "that the court, not the arbitrator,

must make the determination that all preconditions to arbitration 

have been met." Id. at 1093 (emphasis added). The court easily 

rejected this argument:

[T]he significance of a default in
literal compliance with a contractual
procedural requirement calls for a
determination of the intention of the
parties to the contract. Such a
determination is no different in kind
from a dispute over a substantive
contract provision. Both types of
determinations are, under the governing
case law, matters for the arbitrator.

Id. 

A plethora of circuit court cases have interpreted John 

Wiley in the same or similar fashion. See, e.g., Denhardt v. 

Trailways, Inc., 767 F.2d 687, 689 (10th Cir. 1985) (dispute as 

to employer's compliance with time limit for conducting a hearing

is a procedural matter for arbitrator); Beer Sales Drivers, Local 

-12-

744 v. Metropolitan Distribs., Inc., 763 F.2d 300, 302-03 (7th 

Cir. 1985) (union's alleged failure to submit its members'

grievances within time limitation specified in agreement is an

issue of procedural arbitrability for arbitrator); Nursing Home & 

Hosp. Union 434 v. Sky Vue Terrace, Inc., 759 F.2d 1094, 1097 (3d 

Cir. 1985) ("the law is clear that matters of procedural

arbitrability, such as time limits, are to be left for the

arbitrator"); Automotive, Petroleum & Allied Indus. Employees 

Union, Local 618 v. Town & Country Ford, Inc., 709 F.2d 509 (8th 

Cir. 1983) (whether grievance was barred from arbitration due to

union's alleged failure to submit complaint to employer within

five days from notice of discharge, as required by agreement, is

question of procedural arbitrability for arbitrator); Hospital & 

Inst. Workers Union Local 250 v. Marshal Hale Memorial Hosp., 647 

F.2d 38, 40-41 (9th Cir. 1981) (alleged noncompliance with timing

requirements of a multiple step procedure is a question for the

arbitrator); United Rubber, Cork, Linoleum & Plastic Workers v. 

Interco, Inc., 415 F.2d 1208, 1210 (8th Cir. 1969) (arbitration 

ordered despite union's failure to file arbitration within 90

days). The Company has directed us to no cases to the contrary.

In Washington Hospital Center, supra, the employer 

argued that a grievance was not arbitrable because the union

failed to follow the timing requirements of the step-grievance

process. Relying on John Wiley, the Court of Appeals for the 

District of Columbia found that the employer's position on the

grievance was "sufficiently frivolous and unreasonable to warrant

-13-

a fee award." Washington Hosp. Ctr., 746 F.2d at 1510.2 The 

court reasoned that the employer's position was frivolous and

unreasonable since it made no attempt to distinguish its case

from the facts of John Wiley, and relied solely on an inapposite 

case from another circuit. Id. at 1510-11. 

The Union in this case relied heavily on John Wiley in 

its memorandum in support of its motion for summary judgment.

Nevertheless, the Company made no attempt to distinguish John 

Wiley in its responsive memorandum. Indeed, it did not even 

mention the case. Instead, it relied almost exclusively

(although cursorily) on a case from the Massachusetts Court of

Appeals decided under state, not federal law. The Company does

little better on appeal, citing two pre-John Wiley cases, 

including one from this circuit, for the proposition that: "This

court has held that it is for 'the courts to determine whether

 

2 The court noted that John Wiley created a clear and certain 
rule with regard to procedural arbitrability. We agree with its
comment that:

The benefits of the rule's certainty --
that all disputes as to procedural 
arbitrability are for the arbitrator --
outweigh any countervailing factors. As
the Supreme Court said in Wiley, any 
other rule would engender delay with the
potential to 'entirely eliminate the
prospect of a speedy arbitrated
settlement of the dispute, to the
disadvantage of the parties . . . and
contrary to the aims of national labor
policy.'"

Id. at 1512 (quoting John Wiley, 376 U.S. at 558). 

-14-

procedural conditions to arbitrate have been met.'"3 As 

demonstrated above, it is clear that this proposition did not

survive John Wiley. Moreover, in its sole attempt to distinguish 

John Wiley, the Company compares the time bar provisions of its 

collective-bargaining agreement with a wholly immaterial contract

provision from John Wiley.4 Finally, the Company has directed 

this court to no federal circuit or district court precedent to

support its position.
 

3 The two cases cited are Boston Mut. Life Ins. Co. v. Insurance 
Agents Int'l Union, 258 F.2d 516 (1st Cir. 1958) and Brass & 
Copper Workers Fed. Labor Union No. 19322 v. American Brass Co., 
272 F.2d 849 (7th Cir. 1959), cert. denied, 363 U.S. 845 (1960). 
The Company also indicates that one of these cases -- it is
somewhat unclear which -- is "quoting from" John Wiley. This is, 
of course, a rather dubious proposition considering that both
cases were decided before John Wiley. We will give the Company 
the benefit of the doubt that it intended to say "cited in" John 
Wiley, as both cases are cited therein as examples of circuits 
that have held that it is for the court to determine procedural
questions, John Wiley, 376 U.S. at 556 n.12, a proposition 
rejected by John Wiley and its progeny. Supra. 

4 The Company's brief states:

"Compared with the defendant's contract
language which plainly states 'The time
limits provided in this Article are
conditions precedent for the filing and 
processing of grievances under this 
Article 
. . ., we submit that there is no
comparison or similarity to Wiley, who's 
[sic] contract language simply holds 'No
dispute alleging discrimination shall be
subject to grievance or arbitration
unless no remedy therefore is provided .
. .'" (emphasis in original).

In fact, the actual time bar at issue in John Wiley was very 
similar to that in this case. It stated that: "The failure of
either party to file the grievance within this time limitation
shall be construed and be deemed to be an abandonment of the
grievance." 373 U.S. at 556 n.11.

-15-

Under these extraordinary circumstances, we think the

Company's position regarding the Singh grievance has been and

continues to be frivolous, unreasonable, and without foundation.

We conclude that the district court abused its discretion in

deciding to the contrary.5 Accordingly, we remand the case to

the district court to assess and impose attorneys' fees and costs

upon the Company for its refusal to arbitrate the Singh

grievance.

CONCLUSION CONCLUSION

For the reasons stated herein, the decision of the

district court is affirmed in part and reversed in part, and the 

case is remanded to the district court for further proceedings 

consistent with this opinion.

 

5 In making this determination, we find some significance in the
fact that the district court offered virtually no rationale for
its decision not to award attorneys' fees on the Singh grievance,
despite its recognition that "an 'untimeliness' defense is a
classic case of procedural arbitrability that should be decided
by the arbitrator . . . ."

-16-