UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1066

BROWNING FERRIS INDUSTRIES OF PUERTO RICO, INC.,

Plaintiff, Appellant.

v.

UNION DE TRONQUISTAS, LOCAL 901,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Selya and Cyr, Circuit Judges,

and Pettine,* Senior District Judge.

Jorge Rodriguez Micheo, with whom Goldman, Antonetti & Cordova

was on brief for appellant.
Miguel Cabrera Figueroa for appellee.

July 11, 1994

*Of the District of Rhode Island, sitting by designation.

CYR, Circuit Judge. Plaintiff Browning Ferris
CYR, Circuit Judge.

Industries of Puerto Rico, Inc. (BFI) appeals from a district

court order dismissing its action to stay arbitration proceedings

brought by defendant-appellee Union De Tronquistas, Local 901

(Union), relating to BFI's discharge of certain Union employees

for participating in an alleged slowdown prohibited by the

Collective Bargaining Agreement (CBA). The district court

ultimately ruled that the dispute was subject to arbitration

because no slowdown occurred. We affirm on the ground that the

underlying contract dispute addressed by the district court must

be submitted to arbitration in accordance with the CBA.

I

BACKGROUND

BFI operates a waste disposal facility in Cata o,

Puerto Rico. The Union represents its drivers, mechanics and

utility workers. After BFI dismissed four employees for

allegedly participating in a "slowdown" prohibited by CBA

15.01,1 the Union initiated grievance proceedings on their

1CBA 15.01 provides:

Neither the Union nor employees covered
herein shall at any time, including lunch
hour, call, cause, sanction, participate in,
permit, authorize, honor, instigate, support,
assist or condone any strike, sympathy
strike, work stoppage, picketing, slowdown or
other concerted and/or intentional effort to

2

behalf pursuant to the contract arbitration clause, CBA 11.01.

BFI in turn commenced the present action to stay arbitration, see

Labor Management Relations Act 301(a), 29 U.S.C. 185(a),

claiming that CBA 15.02 expressly exempts BFI's adverse

employment action from contract grievance and arbitration

procedures.

BFI promptly moved for summary judgment on the ground

that the discharged employees had engaged in an action prohibited

by CBA 15.01, but the district court ruled that a genuine issue

of material fact remained as to whether the employees had engaged

in a "slowdown," and referred the matter to a magistrate-judge.

Following an evidentiary hearing, the magistrate-judge

recommended that the district court find that BFI had failed to

prove a "slowdown," and further recommended that the dispute be

submitted to arbitration. The district court adopted the

magistrate-judge's report and recommendation over BFI's timely

objection, and dismissed the action. On appeal, BFI challenges

the district court order directing that the contract dispute be

submitted to arbitration.

interfere with production, such as, but not
limited to, an extension of lunch or rest
periods or meetings during working hours.

3

II

DISCUSSION

Whether a collective bargaining agreement requires the

parties to arbitrate a particular dispute is a matter of contract

interpretation entrusted in the first instance to trial court

determination, AT&T Technologies v. Commun. Workers, 475 U.S.

643, 649 (1986); Bechtel Constr., Inc. v. Laborers' Int'l Union,

812 F.2d 750, 752 (1st Cir. 1987), subject to de novo review, see

Local 149 of Am. Fed'n of Tech. Eng'rs v. General Elec. Co., 250

F.2d 922, 929 (1st Cir. 1957), cert. denied, 356 U.S. 938 (1958).

We need not address the sufficiency vel non of the district court

finding that BFI failed to prove a prohibited slowdown a

matter on which we take no view since that dispute must be

submitted to arbitration notwithstanding CBA 15.02.

There is nothing ambiguous about section 15.02:

Any employee engaging in any such action as

set forth in Section 15.01 shall be subject

to disciplinary action, including immediate

discharge, at the sole discretion of the
Company and any action taken by the Company

shall not be subject to the grievance and

arbitration procedure contained in [Section

11.01].

(Emphasis added). Its plain language, read together in its

entirety, see Commercial Union Ins. Co. v. Walbrook Ins. Co., 7

F.3d 1047, 1051 n.6 (1st Cir. 1993), adverts to two potential

issues between the contracting parties. The first clause

conditions the employer's right to take disciplinary action under

4

section 15.02 on the occurrence of an employee action prohibited

by section 15.01; the last clause makes it clear that the only

employer action exempted from grievance and arbitration under CBA

11.01 is a disciplinary action against an employee who has

violated section 15.01.

The interpretation advanced by BFI disregards the

entire first clause in section 15.02, see Jimenez v. Peninsular &

Oriental Steam Nav. Co., 974 F.2d 221, 223 (1st Cir. 1992) ("In

construing contract language, we endeavor to render no term

meaningless.") (citing cases), which plainly preconditions the

employer's unilateral right to discipline an employee on a

determination that the employee has violated section 15.01.

Next, it gratuitously assumes that the last clause in section

15.02 vests the employer, sub silentio, with unfettered

discretion to determine whether the employee violated section

15.01, e.g., by participating in a prohibited slowdown, without

any right of recourse to grievance or arbitration procedures.

But see Cofman v. Acton Corp., 958 F.2d 494, 497 (1st Cir. 1992)

(applying "inclusio unius est exclusio alterius").

The interpretation urged by BFI contravenes not only

the governing rules of contract construction, see, e.g.,

Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment &

Allied Indus. Fund, 967 F.2d 688, 694 (1st Cir. 1992) (construing

CBA in accordance with general contract law), but the Supreme

Court's admonition that "where the [CBA] contains an arbitration

5

clause, there is a presumption of arbitrability in the sense that

'[a]n order to arbitrate the particular grievance should not be

denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that

covers the asserted dispute. Doubts should be resolved in favor

of coverage.'" AT&T Technologies, 475 U.S. at 650 (quoting

Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83

(1960)). In this case, we could not say with any assurance at

all that section 15.02 permits the employer to determine,

unilaterally and conclusively, that section 15.01 has been

violated by the employee.

Finally, the interpretation proposed by BFI would lead

to the absurd result that any employee could be discharged at any

time, with no right of recourse to grievance or arbitration

procedures, simply on the employer's "say-so" that the employee

had engaged in conduct prohibited by section 15.01. An

interpretation so at odds with the role of collective bargaining

in labor-management relations would give us serious pause even

assuming some plausible textual basis in the collective

bargaining agreement. The utter absence of textual support

agreeably precludes any interpretive quandary.

For the foregoing reasons, the district court order is

affirmed.
affirmed

6