USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1066 BROWNING FERRIS INDUSTRIES OF PUERTO RICO, INC., Plaintiff, Appellant. v. UNION DE TRONQUISTAS, LOCAL 901, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Selya and Cyr, Circuit Judges, ______________ and Pettine,* Senior District Judge. _____________________ ____________________ Jorge Rodriguez Micheo, with whom Goldman, Antonetti & Cordova _______________________ _____________________________ was on brief for appellant. Miguel Cabrera Figueroa for appellee. _______________________ ____________________ July 11, 1994 ____________________ ____________________ *Of the District of Rhode Island, sitting by designation. CYR, Circuit Judge. Plaintiff Browning Ferris CYR, Circuit Judge. ______________ Industries of Puerto Rico, Inc. (BFI) appeals from a district court order dismissing its action to stay arbitration proceedings brought by defendant-appellee Union De Tronquistas, Local 901 (Union), relating to BFI's discharge of certain Union employees for participating in an alleged slowdown prohibited by the Collective Bargaining Agreement (CBA). The district court ultimately ruled that the dispute was subject to arbitration because no slowdown occurred. We affirm on the ground that the underlying contract dispute addressed by the district court must be submitted to arbitration in accordance with the CBA. I I BACKGROUND BACKGROUND __________ BFI operates a waste disposal facility in Cata o, Puerto Rico. The Union represents its drivers, mechanics and utility workers. After BFI dismissed four employees for allegedly participating in a "slowdown" prohibited by CBA 15.01,1 the Union initiated grievance proceedings on their ____________________ 1CBA 15.01 provides: Neither the Union nor employees covered herein shall at any time, including lunch hour, call, cause, sanction, participate in, permit, authorize, honor, instigate, support, assist or condone any strike, sympathy strike, work stoppage, picketing, slowdown or other concerted and/or intentional effort to 2 behalf pursuant to the contract arbitration clause, CBA 11.01. BFI in turn commenced the present action to stay arbitration, see ___ Labor Management Relations Act 301(a), 29 U.S.C. 185(a), claiming that CBA 15.02 expressly exempts BFI's adverse employment action from contract grievance and arbitration procedures. BFI promptly moved for summary judgment on the ground that the discharged employees had engaged in an action prohibited by CBA 15.01, but the district court ruled that a genuine issue of material fact remained as to whether the employees had engaged in a "slowdown," and referred the matter to a magistrate-judge. Following an evidentiary hearing, the magistrate-judge recommended that the district court find that BFI had failed to prove a "slowdown," and further recommended that the dispute be submitted to arbitration. The district court adopted the magistrate-judge's report and recommendation over BFI's timely objection, and dismissed the action. On appeal, BFI challenges the district court order directing that the contract dispute be submitted to arbitration. ____________________ interfere with production, such as, but not limited to, an extension of lunch or rest periods or meetings during working hours. 3 II II DISCUSSION DISCUSSION __________ Whether a collective bargaining agreement requires the parties to arbitrate a particular dispute is a matter of contract interpretation entrusted in the first instance to trial court determination, AT&T Technologies v. Commun. Workers, 475 U.S. __________________ _______________ 643, 649 (1986); Bechtel Constr., Inc. v. Laborers' Int'l Union, ______________________ _____________________ 812 F.2d 750, 752 (1st Cir. 1987), subject to de novo review, see __ ____ ___ Local 149 of Am. Fed'n of Tech. Eng'rs v. General Elec. Co., 250 _______________________________________ _________________ F.2d 922, 929 (1st Cir. 1957), cert. denied, 356 U.S. 938 (1958). _____ ______ We need not address the sufficiency vel non of the district court ___ ___ finding that BFI failed to prove a prohibited slowdown a matter on which we take no view since that dispute must be submitted to arbitration notwithstanding CBA 15.02. There is nothing ambiguous about section 15.02: Any employee engaging in any such action as ___ ________ ________ __ ___ ______ set forth in Section 15.01 shall be subject ___ _____ __ _______ _____ _____ __ _______ to disciplinary action, including immediate __ ____________ ______ discharge, at the sole discretion of the Company and any action taken by the Company ___ ___ ______ _____ __ ___ _______ shall not be subject to the grievance and _____ ___ __ _______ __ ___ _________ ___ arbitration procedure contained in [Section ___________ 11.01]. (Emphasis added). Its plain language, read together in its entirety, see Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 ___ __________________________ __________________ F.3d 1047, 1051 n.6 (1st Cir. 1993), adverts to two potential issues between the contracting parties. The first clause conditions the employer's right to take disciplinary action under 4 section 15.02 on the occurrence of an employee action prohibited by section 15.01; the last clause makes it clear that the only employer action exempted from grievance and arbitration under CBA 11.01 is a disciplinary action against an employee who has violated section 15.01. The interpretation advanced by BFI disregards the entire first clause in section 15.02, see Jimenez v. Peninsular & ___ _______ ____________ Oriental Steam Nav. Co., 974 F.2d 221, 223 (1st Cir. 1992) ("In _______________________ construing contract language, we endeavor to render no term meaningless.") (citing cases), which plainly preconditions the employer's unilateral right to discipline an employee on a determination that the employee has violated section 15.01. Next, it gratuitously assumes that the last clause in section ____________ _______ 15.02 vests the employer, sub silentio, with unfettered ___ ________ discretion to determine whether the employee violated section 15.01, e.g., by participating in a prohibited slowdown, without ____ any right of recourse to grievance or arbitration procedures. But see Cofman v. Acton Corp., 958 F.2d 494, 497 (1st Cir. 1992) ___ ___ _______ ___________ (applying "inclusio unius est exclusio alterius"). ________ _____ ___ ________ ________ The interpretation urged by BFI contravenes not only the governing rules of contract construction, see, e.g., ___ ____ Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & _________________________________ ____________________________ Allied Indus. Fund, 967 F.2d 688, 694 (1st Cir. 1992) (construing __________________ CBA in accordance with general contract law), but the Supreme Court's admonition that "where the [CBA] contains an arbitration 5 clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT&T Technologies, 475 U.S. at 650 (quoting __________________ Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 ____________ _________________________ (1960)). In this case, we could not say with any assurance at ___ all that section 15.02 permits the employer to determine, unilaterally and conclusively, that section 15.01 has been violated by the employee. Finally, the interpretation proposed by BFI would lead to the absurd result that any employee could be discharged at any ___ ___ time, with no right of recourse to grievance or arbitration __ procedures, simply on the employer's "say-so" that the employee had engaged in conduct prohibited by section 15.01. An interpretation so at odds with the role of collective bargaining in labor-management relations would give us serious pause even assuming some plausible textual basis in the collective bargaining agreement. The utter absence of textual support agreeably precludes any interpretive quandary. For the foregoing reasons, the district court order is affirmed. affirmed ________ 6