# United States Court of Appeals
## For the First Circuit

No. 00-2177

THE PROVIDENCE JOURNAL COMPANY,

Plaintiff, Appellant,

v.

PROVIDENCE NEWSPAPER GUILD,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]
[Hon. Robert W. Lovegreen, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Lipez, Circuit Judge,
and Zobel,* District Judge.

Richard A. Perras, with whom Lincoln D. Almond, Edwards & Angell, LLP, was on brief, for appellant.
John F. McMahon, with whom E. David Wanger, Angoff, Goldman, Manning, Wanger & Hynes, P.C. and Richard S. Humphrey, was on brief, for appellee.

---

* Of the District of Massachusetts, sitting by designation.

November 9, 2001

**TORRUELLA, <u>Circuit Judge</u>.** Plaintiff-Appellant Providence Journal Company (the "Journal") and Defendant-Appellee Providence Newspaper Guild (the "Guild") were parties to a collective bargaining agreement. After a dispute arose over the interpretation of a clause in the agreement, the Guild filed a grievance. The parties submitted the matter to arbitration, and the arbitrator ruled in favor of the Guild. The Journal then filed this action in district court seeking to vacate the arbitrator's decision. Rejecting the Journal's claims, the district court granted summary judgment for the Guild. The Journal now appeals the district court's decision. Because we conclude that the arbitrator's interpretation of the collective bargaining agreement is plausible, we affirm the district court's decision to grant summary judgment for the Guild.

**BACKGROUND**

The Journal and the Guild were parties to a collective bargaining agreement (the "agreement") that, by its terms, expired on December 31, 1999, but was later extended through January 31, 2000. Article XIX, Section 3 of the agreement provides different classifications of employees with different parking benefits as follows:

> (e) The Publisher shall provide employee parking in the Company's Fountain Street parking lot on the same basis as parking at that lot is offered to other employees of the Company.

(f) The Company shall provide free parking to employees who are regularly required to maintain an automobile for use in the performance of their duties.

(g) Employees who work fewer than five (5) days per week shall be eligible to purchase per diem parking passes from the Parkade Parking Garage at not more than four dollars ($4.00) per day. This provision shall remain in effect for the term of this agreement or until the Company divests ownership of the aforementioned garage, whichever occurs sooner.

Prior to February 1998, part-time employees were able to use their per diem parking passes without difficulty. Beginning in February 1998, however, per diem pass-holders were consistently denied access to the Parkade Parking Garage and were forced to park elsewhere at a per diem cost between $6.00 and $10.00. Nevertheless, members of the general public who purchased parking passes at a rate of $120 per month were still granted access to the Parkade Parking Garage.

On March 11, 1998, the Guild filed a grievance with the Journal. Invoking Article XIX, Section 3(g) of the agreement, the Guild requested that the Journal provide parking for all per diem pass-holders and reimburse them for the costs incurred while being forced to park elsewhere.

On November 3, 1999, the parties submitted the matter to arbitration. At the arbitration hearing, the parties informally agreed to bifurcate the issues of liability and damages. On December 27, 1999, the arbitrator found that the Journal had violated the agreement by not providing parking to all per diem pass-holders. The arbitrator

ordered the parties to work together to fashion a remedy that would provide parking to the pass-holders and would reimburse them for the costs of parking elsewhere. The arbitrator also retained jurisdiction over the case if the parties could not agree on a remedy.

After a failed meeting to craft a remedy, the Journal filed this action under 9 U.S.C. § 10 of the Federal Arbitration Act ("FAA").[1] The Journal sought to have the arbitration award vacated and to deny the Guild's grievance. The parties then filed cross motions for summary judgment. On July 25, 2000, Magistrate Judge Lovegreen issued a Report and Recommendation, which was subsequently adopted by the district court, granting summary judgment in favor of the Guild.

## DISCUSSION

### A.

Before analyzing the merits of the Journal's appeal, we find it necessary to address a jurisdictional issue that has received little attention thus far. Though neither party raises the issue,[2] there is a question as to whether the district court had jurisdiction to review the arbitrator's decision. Because we believe that the holding in Hart

---

[1] As the district court noted, jurisdiction actually exists under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

[2] Furthermore, when the parties, at our request, addressed the jurisdiction issue in supplemental briefing, they both agreed that the district court's exercise of jurisdiction was proper.

<u>Surgical, Inc.</u> v. <u>Ultracision, Inc.</u>, 244 F.3d 231 (1st Cir. 2001),[3] extends to the facts of this case, we conclude that the district court properly exercised its jurisdiction.

In <u>Hart</u>, this Court held that in an arbitration case that is bifurcated into liability and damages phases, the arbitral award with respect to liability is a final award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 <u>et seq.</u>, and is therefore subject to review by courts. 244 F.3d at 235. Our holding, however, was limited to cases in which the parties, at the arbitration stage, had <u>formally</u> agreed to bifurcate arbitration into liability and damages phases. <u>Id.</u> Thus, the instant case presents us with the question that we expressly declined to decide in <u>Hart</u> – whether a partial arbitration award on liability is reviewable in the absence of formal bifurcation.

To determine whether the arbitration award in <u>Hart</u> was "final," and thus subject to judicial review, this Court examined two factors: (1) whether, and to what extent, both parties had expressed an intent to bifurcate, and (2) whether the arbitrator and the parties understood the determination of liability to be a final award. <u>Id.</u>

_____

[3] Although <u>Hart</u> involved a commercial arbitration award subject to the FAA and the present case involves a labor arbitration award enforceable under the Labor Management Relations Act ("LMRA"), federal courts rely on FAA cases to inform their LMRA analysis. <u>United Paperworkers Int'l Union</u> v. <u>Misco, Inc.</u>, 484 U.S. 29, 40 n.9 (1987) (noting that federal courts look to the FAA for guidance in interpreting the LMRA); <u>Derwin</u> v. <u>General Dynamics Corp.</u>, 719 F.2d 484, 487-88 (1st Cir. 1983) (same).

Applying this framework to the instant case, it is clear that the partial award on liability should be deemed "final." On November 3, 1999, the parties agreed to divide the arbitration hearing into two parts: the first phase required the arbitrator to determine whether the collective bargaining agreement had been violated; and the second phase required him to fashion a remedy. The arbitrator acknowledged this stipulation of the parties by noting, "If I find a violation of the contract, I should retain jurisdiction for purposes of facilitating compliance with a remedy." (Appellant's Supplemental Brief app. 5). All evidence related to the issue of liability was then presented to the arbitrator, and shortly thereafter he issued his decision on liability. In doing so, the arbitrator, in turn, "conclusively decided every point required by and included in" the liability phase. Trade & Transp., Inc. v. Natural Petroleum Charterers Inc., 931 F.2d 191, 195 (2d Cir. 1991); McGregor Van De Moere, Inc. v. Paychex, Inc., 927 F. Supp. 616, 618 (W.D.N.Y. 1996) (concluding that the parties' decision to bifurcate the issue of liability from damages reflects their agreement that the award on liability will be final).

It is evident from the November arbitration hearing that the parties intended, though never formally stated, to bifurcate the proceedings. They divided the arbitration into separate phases and requested that the arbitrator retain jurisdiction over the remedy issue. In fact, had the parties not been stipulating to bifurcation,

-7-

there would have been no need for the parties to specifically request that the arbitrator retain jurisdiction over the remedial phase. Clearly, then, both the parties and the arbitrator agreed to bifurcate the arbitral proceeding and understood the determination of liability to be a final award.

Although our holding in Hart was limited to formal agreements to bifurcate, see 244 F.3d at 235, we see no reason to fashion a different rule when the bifurcation has been informally agreed upon. For that reason, we deem the arbitrator's partial award on liability "final," and conclude that the district court properly exercised its jurisdiction over the case.

**B.**

Turning to the merits, the Journal argues that the arbitrator's award should be vacated because it fails to draw its essence from the contract. In particular, the Journal faults the arbitrator for implying terms into the agreement that were not negotiated by the parties and for improperly relying on the parties' past practice.

In assessing the Journal's claims, we note that judicial review of an arbitration decision is extremely narrow and extraordinarily deferential. See Maine Cent. R.R. Co. v. Bhd. of Maintenance of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989) (noting that judicial review of arbitration decisions "is among the narrowest

known in the law"). A court cannot vacate an arbitral award as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). In the end, the court's task "is limited to determining if the arbitrator's interpretation of the contract is in any way plausible." Labor Relations Div. of Constr. Indus. v. Int'l Bhd. Teamsters, Local No. 379, 29 F.3d 742, 745 (1st Cir. 1994).

The Journal claims that the arbitrator failed to base his decision on the plain language of the contract. More specifically, the Journal notes that the express language of Article XIX, Section 3(g) provides only that covered part-time employees "are eligible to purchase per diem parking passes." Thus, the agreement does not guarantee employees the right to park, but only the right to purchase discount parking passes. The Journal, then, faults the arbitrator for implying a term into the agreement that was not negotiated by the parties.

To bolster its argument, the Journal points to the plain language of the two paragraphs that precede Section 3(g). In particular, Sections 3(e) and (f) require that the Journal provide "parking" to certain employees. Appellant argues that had the Guild sought this more generous level of parking benefit for the part-time

employees, it could have done so through negotiation of the same parking language into Section 3(g).

We are unpersuaded by the Journal's argument, however, because we find the arbitrator's decision to be a plausible, common sense interpretation of the agreement's plain language. As noted, Section 3(g) provides employees with the right to purchase discount parking passes. However, the agreement is silent on what benefits accrue to the holder of a parking pass. Plain language would seem to dictate that a parking pass entitles one to actually park. Otherwise, the right to purchase a discounted parking pass would be completely meaningless. It makes little sense that the parties bargained for parking passes that did not provide parking. Since it is a basic principle of contract law that constructions which render contract terms meaningless should be avoided, see, e.g., Systemized of New England, Inc. v. SCM, Inc., 732 F.2d 1030, 1034 (1st Cir. 1984) (applying the "familiar principle" that every part of a contract should be given "meaning and effect"), we find the arbitrator's interpretation consistent with the plain language of the agreement.

The arbitrator's conclusion is further supported by the parties' past practice. For four years prior to February 1998, employees purchased discount parking passes and were able to park regularly at the Parkade Garage. The arbitrator relied on this past practice as corroborating evidence for his interpretation of the terms

in Section 3(g).  Because this Court allows arbitrators to use past practice as an interpretive device or as relevant evidence, we find no error here.  See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960) ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial custom - the practices of the industry and the shop - is equally a part of the collective bargaining agreement although not expressed in it."); Strathmore Paper Co. v. United Paperworkers Int'l Union, Local 197, 900 F.2d 423, 427-28 (1st Cir. 1990) (noting that an arbitrator may factor past practice into his decision when the contract does not expressly prohibit it).

The Journal argues, however, that the arbitrator improperly relied on its past practice of honoring the parking passes.  More specifically, the Journal claims that the arbitrator erroneously elevated the parties' past practice to a term of the contract.  The Journal offers no support for its bald assertion that the arbitrator substituted past practice for contractual terms.  Instead, the record shows that the arbitrator interpreted the plain language of Section 3(g) to include the right to park and, only then, used past practice to reinforce his conclusion.  We find no error in this sound mode of analysis.

## CONCLUSION

-11-

Because we find the arbitrator's decision to be a plausible, if not reasonable, interpretation of the collective bargaining agreement, we affirm the district court's decision granting summary judgment for the Guild.

**Affirmed**.