NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Strafford
No. 2015-0187

UNIVERSITY SYSTEM OF NEW HAMPSHIRE BOARD OF TRUSTEES & a.

v.

MARCO DORFSMAN & a.

Argued: November 12, 2015
Opinion Issued: December 23, 2015

Sulloway & Hollis, P.L.L.C., of Concord (Edward M. Kaplan on the brief and orally), for the petitioners.

Milner & Krupski, PLLC, of Concord (Glenn R. Milner on the brief and orally), for the respondents.

DALIANIS, C.J. The respondents, Marco Dorfsman and the University of New Hampshire Chapter of the American Association of University Professors (Union), appeal an order of the Superior Court (Tucker, J.) granting the petition for declaratory relief filed by the petitioners, the University System of New Hampshire Board of Trustees and the University of New Hampshire (collectively, UNH). The superior court vacated the arbitrator's decision that UNH had violated its collective bargaining agreement (CBA) with the Union by terminating Dorfsman's employment for engaging in an act of "moral turpitude." We affirm.

I.  Procedural Background

The relevant facts follow.  In 2012, Dorfsman was an Associate Professor and the Chair of the Language, Literature, and Culture Department at UNH.  In December of that year, he intentionally lowered the evaluations that students had given a certain lecturer by erasing markings on the evaluations; if the highest ranking had been given, he entered a different and lower rating.  In May 2013, UNH terminated Dorfsman's employment for this conduct, which UNH determined constituted an act of "moral turpitude" within the meaning of the CBA.  Dorfsman and the Union grieved his termination, and, pursuant to the CBA, the parties submitted to binding arbitration to resolve that grievance.

Although the arbitrator agreed with UNH that Dorfsman's conduct constituted an act of "moral turpitude," he also determined that, because of several mitigating factors, Dorfsman's termination did not comport with principles of just cause.  At the arbitration hearing, the arbitrator remanded the matter so that they could negotiate the proper level of discipline; should they fail to agree within 30 days, the arbitrator would determine Dorfsman's discipline.

UNH timely filed its complaint in superior court seeking a declaration that the arbitrator had exceeded his authority and requesting the court to vacate his decision.  Following a hearing, the trial court concluded that:  (1) it had jurisdiction to consider UNH's appeal of the arbitrator's award; (2) the issues raised in that appeal were ripe for adjudication; and (3) the arbitrator exceeded his authority under the CBA when he found that Dorfsman's termination was not supported by just cause.  The respondents unsuccessfully moved for reconsideration, and this appeal followed.

On appeal, the respondents argue that the trial court lacked jurisdiction to review the arbitrator's decision, the issues are not ripe for judicial review, and the arbitrator did not exceed his authority when he found that UNH lacked just cause to terminate Dorfsman's employment.  The respondents do not challenge the arbitrator's finding that Dorfsman's conduct constituted "moral turpitude" within the meaning of the CBA.

II.  Analysis

A.  Jurisdiction

We first address whether the superior court had jurisdiction to consider UNH's appeal of the arbitrator's decision.  Whether the trial court had jurisdiction is a question of law subject to de novo review.  See In the Matter of Muller & Muller, 164 N.H. 512, 517 (2013).  The respondents contend that the superior court lacked jurisdiction to review the arbitrator's award because:  (1) RSA chapter 542 is the only means by which the court could have had such

2

jurisdiction; (2) pursuant to RSA 542:1 (2007), the provisions of RSA chapter 542 do "not apply to any arbitration agreement between . . . employers and associations of employees unless such agreement specifically provides that it shall be subject to the provisions" of RSA chapter 542; and (3) the CBA does not specifically provide that it is subject to the provisions of that chapter.

Article 9.5.5 of the CBA provides, in pertinent part:

> The decision of the Arbitrator . . . shall be final except that within thirty (30) calendar days after the issuance of a decision by the Arbitrator either party may appeal the decision to the Superior Court. The basis of the appeal shall be limited to plain mistake, whether legal or factual, fraud, corruption, or misconduct by the parties, or on the grounds that the Arbitrator exceeded his or her powers as specified in this Article.

Because they do not argue otherwise, the petitioners apparently agree that the language of Article 9.5.5 was insufficient to bring the CBA within the aegis of RSA chapter 542. See Southwestern Trans. Co. v. Durham, 102 N.H. 169, 173 (1959) (stating that "[t]he collective bargaining agreement in this case is subject to the provisions of RSA ch. 542 by its express terms"); cf. Appeal of Internat'l Assoc. of Firefighters, 123 N.H. 404, 409 (1983) (holding that arbitrator's decision was not subject to review by the New Hampshire Public Employee Labor Relations Board because the parties' agreement "made no reference to RSA chapter 542[,] . . . did not provide for an appeal to the PELRB[,] [and] . . . expressly stated that the arbitrator's decision was to be binding upon both the union and the city"). Accordingly, for the purposes of this appeal, we assume without deciding that RSA chapter 542 does not apply to this case.

The petitioners argue that, notwithstanding RSA chapter 542, the superior court had jurisdiction to review the arbitration award here. We agree.

"The superior court is a court of general jurisdiction and has authority to entertain actions in equity where there is no adequate remedy at law." Woodstock Soapstone Co. v. Carleton, 133 N.H. 809, 816 (1991); see RSA 498:1 (2010). We have previously recognized that the superior court has jurisdiction to review arbitral awards. See, e.g., Brampton Woolen Co. v. Local Union, 95 N.H. 255, 256 (1948) (concluding that court had jurisdiction to determine whether a dispute was arbitrable); Ford v. Burleigh, 60 N.H. 278 (1880) (reviewing whether arbitrators exceeded their authority).

To the extent that the legislature intended RSA chapter 542 to abrogate the common law right of superior court review of an arbitration award when, as in this case, the parties specifically bargained for that review, it had to state so expressly. "We will not construe a statute," here RSA chapter 542, "as abrogating the common law unless the statute clearly expresses such an

3

intention." Case v. St. Mary's Bank, 164 N.H. 649, 655 (2013) (quotations and brackets omitted). RSA chapter 542 does not clearly express such an intention. Indeed, RSA 542:1 exempts "any arbitration agreement between employers and employees, or between employers and associations of employees," unless that agreement "specifically provides that it shall be subject to the provisions of [the] chapter," implying that far from intending to abrogate, the legislature intended to preserve the common law right of superior court review of arbitration decisions. Thus, we agree with UNH that the superior court had jurisdiction to review the arbitrator's decision.

The respondents argue that our decision "create[s] havoc in the public sector labor community by establishing the Superior Court as an appellate body for run of the mill employment related arbitration cases, even for labor agreements that do not invoke RSA 542." This argument is made to the wrong forum, as matters of public policy are reserved for the legislature. Petition of Kilton, 156 N.H. 632, 645 (2007). Moreover, given that the New Hampshire Public Employee Labor Relations Board "has no general authority to review an arbitration award, absent some indication that the parties intended to reserve a right to administrative review of the award," Bd. of Trustees v. Keene State Coll. Educ. Assoc., 126 N.H. 339, 342 (1985), we fail to see how our decision "create[s] havoc in the public sector labor community."

We have reviewed the respondents' remaining arguments on this issue and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

B. Ripeness

We next consider whether the issues in UNH's appeal are ripe for adjudication. "[R]ipeness relates to the degree to which the defined issues in a case are based on actual facts and are capable of being adjudicated on an adequately developed record." Appeal of City of Concord, 161 N.H. 344, 354, (2011) (quotation omitted). Although we have not adopted a formal test for ripeness, we have found "persuasive the two-pronged analysis used by other jurisdictions that evaluates the fitness of the issue for judicial determination and the hardship to the parties if the court declines to consider the issue." Appeal of State Employees' Assoc., 142 N.H. 874, 878 (1998). With respect to the first prong of the analysis, fitness for judicial review, a claim is fit for decision when: (1) the issues raised are primarily legal; (2) they do not require further factual development; and (3) the challenged action is final. Petition of State of N.H. (State v. Fischer), 152 N.H. 205, 210 (2005), superseded by rule on other grounds as stated in State v. Mottola, 166 N.H. 173, 176 (2014). "The second prong of the ripeness test requires that the contested action impose an impact on the parties sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." Id. (quotations omitted).

The respondents challenge the ripeness of UNH's appeal issues on a single ground – that the arbitration award in this case is not final. They argue that the award is not final because it directed the parties to negotiate the penalty to be imposed. The respondents contend that without a penalty, "there is no award for any [c]ourt to review." We disagree.

We find Providence Journal v. Providence Newspaper Guild, 271 F.3d 16 (1st Cir. 2000), instructive. In the First Circuit, when "an arbitration case . . . is bifurcated into liability and damages phases, the arbitral award with respect to liability is a final award under the Federal Arbitration Act . . . and is therefore subject to review by courts." Providence Journal, 271 F.3d at 19 (citation omitted). To determine whether an arbitration award is "final, and thus subject to judicial review," the First Circuit Court of Appeals examines two factors: "(1) whether, and to what extent, both parties had expressed an intent to bifurcate, and (2) whether the arbitrator and the parties understood the determination of liability to be a final award." Id. (quotation omitted).

In Providence Journal, the court concluded that, although the parties did not formally bifurcate the arbitration proceedings, they informally "divided the arbitration into separate phases," a liability phase and a remedy phase, "and requested that the arbitrator retain jurisdiction over the remedy issue." Id. at 20. In the liability phase, the arbitrator had "to determine whether the collective bargaining agreement had been violated." Id. at 19. "All evidence related to the issue of liability was then presented to the arbitrator, and shortly thereafter he issued his decision on liability." Id. Because "both the parties and the arbitrator agreed to bifurcate the arbitral proceeding and understood the determination of liability to be a final award," the court deemed the arbitrator's decision on liability to be a "final" decision subject to judicial review. Id. at 20 (quotation omitted).

In this case, as in Providence Journal, "the parties intended, though never formally stated, to bifurcate the proceedings." Id. According to the arbitrator, he was initially to determine "whether [UNH's] decision to dismiss . . . Dorfsman violated the terms of the [CBA]." The arbitrator stated that the parties then agreed "that should [he] . . . decide[ ] . . . that the dismissal violated the [CBA], . . . the matter should be remanded back to the parties to attempt to agree upon an appropriate resolution" and, if they were unable to agree, he "would retain jurisdiction over any appropriate remedy." "[H]ad the parties not been stipulating to bifurcation, there would have been no need for [them] to specifically request that the arbitrator retain jurisdiction over the remedial phase." Id.

As in Providence Journal, the parties and arbitrator understood the arbitrator's liability decision to be final. Here, both the parties and the arbitrator understood that, once the arbitrator decided whether UNH violated the CBA, there were to be no further arbitral proceedings on that question.

5

Accordingly, as to the only issue the arbitrator decided – whether UNH violated the CBA when it terminated Dorfsman's employment – we deem the arbitrator's decision to be final and properly the subject of judicial review. See id. Because the respondents do not challenge the ripeness of UNH's appeal issues on any other ground, we conclude that those issues are ripe for our review.

### C. Scope of Arbitrator's Authority

Finally, we address whether the trial court correctly determined that the arbitrator exceeded his authority under the CBA when he found that Dorfsman's termination was not supported by just cause. "A judicial challenge to arbitral authority requires the reviewing court to consider both the CBA and the arbitral submission." Appeal of Merrimack County, 156 N.H. 35, 39 (2007) (quotation omitted). Although ordinarily we interpret contractual provisions de novo, "the general rule is that the interpretation of a CBA is within the province of the arbitrator, subject to certain exceptions recognized by our case law that are not relevant here." Id. at 40 (quotation and brackets omitted). Thus, our review, and the superior court's review, of the arbitrator's interpretation of the CBA is limited. See id. We accord the same deference to the arbitrator's interpretation of the parties' submission. Id.

A court may not reject the arbitrator's interpretation of the CBA simply because it disagrees with it. See id. Provided that an arbitrator's decision "draws its essence" from the CBA and the arbitrator is not fashioning "his own brand of industrial justice," the award will stand. Paperworkers v. Misco, Inc., 484 U.S. 29, 36 (1987) (quotations omitted). A court's task, thus, is "ordinarily limited to determining whether the arbitrator's construction of the CBA is to any extent plausible." Appeal of Merrimack County, 156 N.H. at 40 (quotation, ellipsis, and brackets omitted).

However, "[w]hen the arbitrator's words manifest an infidelity to th[e] obligation" to draw the essence of his award from the collective bargaining agreement, "courts have no choice but to refuse enforcement of the award." Steelworkers v. Enterprise Corp., 363 U.S. 593, 597 (1960). One example of when an arbitrator's award fails to draw its essence from the CBA is when the award conflicts with the express terms of the CBA. See Misco, Inc., 484 U.S. at 38. "If the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." Poland Spring Corp. v. United Food, Local 1445, 314 F.3d 29, 33 (1st Cir. 2002).

Here, we cannot say that the arbitrator's construction of the CBA was "to any extent plausible." Appeal of Merrimack County, 156 N.H. at 40 (quotation omitted). According to the arbitrator, the only issue for his review in this bifurcated proceeding was "whether [UNH's] decision to dismiss . . . Dorfsman violated the terms of the [parties'] agreement." Article 9.5.4 of the CBA similarly limited the arbitrator's authority in this first phase of the proceedings

6

to determining whether UNH had "violated, misinterpreted or misapplied" the CBA when it terminated Dorfsman's employment. Article 14.2.1 gave UNH the authority to terminate Dorfsman's employment "for just cause." That article defined "just cause" as "encompass[ing] professional incompetence, deliberate neglect of duty or moral turpitude." Article 14.2.3 allowed UNH to terminate Dorfsman's employment immediately. It provides: "If charges involving moral turpitude are sustained, the bargaining unit member may be terminated immediately and the bargaining unit member shall not be entitled to receive further pay or benefits." By contrast, if the charges concerned professional incompetence or deliberate neglect of duty, Article 14.2.3 allowed UNH to terminate the employee's employment only at "the end of the academic year, or, in the case of tenured faculty members, twelve (12) months after receiving formal notice of [UNH's] intent not to renew the appointment."

Thus, having found that Dorfsman engaged in conduct constituting "moral turpitude" within the meaning of Article 14.2.1, "the arbitrator was barred from further inquiry because such additional probing constituted ignoring the plain language of the contract." Poland Spring Corp., 314 F.3d at 34 (quotations and brackets omitted). "[O]nce an arbitrator finds that an employee has committed an act specifically listed in the collective bargaining agreement as providing just cause for termination, the arbitrator is not free to fashion a separate remedy apart from the one provided by the parties' agreement." Id. "If the parties intended mitigating circumstances to affect whether [moral turpitude] constitutes just cause for termination, then they would have expressed their intent in the contract." Id. at 35. Because the arbitrator found that Dorfsman engaged in "moral turpitude" and that finding is not challenged on appeal, his decision to overturn UNH's decision to terminate Dorfsman's employment "due to mitigating circumstances impermissibly substituted his own notions of industrial justice over those established by the contract." Id.

The language of the CBA renders this case distinguishable from Appeal of Merrimack County. The collective bargaining agreement in Appeal of Merrimack County, unlike the CBA in this case, did not even use the phrase "just cause." Appeal of Merrimack County, 156 N.H. at 43 (quotation omitted). Thus, in Appeal of Merrimack County, when the parties specifically "asked the arbitrator to decide whether the county had 'just cause' to terminate [the employee]," it was reasonable for the arbitrator to infer that they had asked him to apply traditional principles of just cause to his review of the county's decision. Id. at 41. Such an inference was not reasonable in the instant case because the CBA here "unambiguously provided that employees could not be terminated except for just cause and expressly included the employee's act within the definition of just cause." Id. at 43.

The respondents contend that because the CBA provides that a bargaining unit member "may" be terminated and does not state that the

7

member "shall" be so terminated, it does not "prevent the Arbitrator from fashioning a remedy in conformance with the general 'just cause' standard." We disagree with the respondents that this is a plausible reading of the CBA.

"In a proper case[,] an arbitrator, in reliance on custom or usage in an industry, may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline but not for discharge." Mistletoe Exp. Serv. v. Motor Expressmen's U., 566 F.2d 692, 695 (10th Cir. 1977). In the instant case, however, Article 14.2.1 explicitly says that moral turpitude constitutes just cause for either discharge or suspension without pay. In rejecting UNH's chosen penalty for moral turpitude, "the arbitrator substituted his views of the proper industrial relationships for the provisions of the contract." Id. "The arbitrator may not rewrite the labor contract" in such a way. Id. Because the arbitrator erroneously applied a further just cause analysis to misconduct that was enumerated in the CBA as a proper basis for discharge, the arbitrator exceeded the scope of his authority.

Affirmed.

HICKS, LYNN, and BASSETT, JJ., concurred.

8