# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0677, <u>Santander Bank, N.A. v. Jerome J. Day, Jr., Trustee of the Jerome J. Day, Jr. Revocable Inter Vivos Trust u/t/d November 10, 2000 & a.</u>, the court on September 27, 2019, issued the following order:**

Having considered the brief filed by the defendants, Jerome J. Day, Jr., trustee of the Jerome J. Day, Jr., Revocable Inter Vivos Trust, and Jane F. de C. Currivan, trustee of the Jane F. de C. Currivan Revocable Inter Vivos Trust, the brief filed by the plaintiff, Santander Bank, N.A. (Santander), the memorandum of law filed by NE Moves Mortgage, LLC (NE Moves), and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendants appeal orders by the Superior Court (<u>Delker</u>, J.) in the action Santander brought to reform a mortgage originally granted to NE Moves and later assigned to Santander. We affirm.

The following facts either were recited by the trial court or drawn from documents introduced at trial and made part of the record on appeal. The defendants, a married couple, are the respective trustees of eponymous revocable inter vivos trusts. Through their trusts, they own property in North Hampton. In 2004, they obtained a $430,000 first mortgage on the property from Piscataqua Savings Bank (Piscataqua). In 2007, they obtained a $640,000 loan from NE Moves, which they secured with a mortgage on the property. In their mortgage application, the defendants indicated that they held the property jointly as individuals. The defendants did not disclose that title to the property was actually held by their respective trusts. When NE Moves discovered that the property was held by the trusts, it requested copies of the trust documents, which the defendants provided.

The closing occurred on December 7, 2007. Although the defendants were listed only in their individual capacities on the first page of the new mortgage, they initialed and signed the mortgage both individually and as trustees.

Under the promissory note accompanying the loan, the defendants agreed to pay $640,000 plus interest at 8.75% for 30 years. The note provided that, in January 2013, the initial fixed interest rate would change to an adjustable rate calculated by adding 2.250% to an index tied to the average yield on United States Treasury securities adjusted to a constant maturity of one year (the One-Year Constant Maturing Treasury Rate). According to the

defendants, for the first five years, the promissory note "was interest only," and "it would begin to amortize after that."

The loan proceeds were used to pay off the first mortgage and for home improvement projects. The new mortgage was recorded on December 11, 2007, and, a discharge of the first mortgage was recorded on December 14. NE Moves completed an assignment of the mortgage to Santander on December 21.

In 2008, the defendants received a letter from Santander, stating that the promissory note erroneously tied the eventual adjustable rate to the wrong interest rate index and that, in January 2013, the rate would "become adjustable based on the LIBOR index." The "LIBOR index" refers to the "average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market." Santander requested that the defendants sign a mortgage modification agreement, but they did not.

The defendants defaulted on their mortgage in 2010. To facilitate a foreclosure, Santander requested that the defendants sign a corrective mortgage, but they refused. Thus, Santander filed the instant action to reform the mortgage to indicate that the defendants were granted a mortgage both in their individual capacities and as trustees of their respective trusts. Alternatively, Santander asked the court to "order that Santander has priority over the interests of [the defendants], to the extent of $409,153.48[,] under the theory of equitable subrogation." In response, the defendants asserted a counterclaim for breach of contract, among other claims. The defendants asserted that Santander breached the parties' contract by charging a higher-than-agreed-to interest rate.

Thereafter, Santander moved for summary judgment on its reformation and equitable subrogation claims. The trial court denied the motion as to the reformation claim because it found "a genuine dispute of material facts as to the defendants' subjective intentions at the time of closing." The trial court granted the motion as to the equitable subrogation claim. Santander also moved to dismiss the defendants' counterclaims, and the trial court granted the motion.

The trial court subsequently held a two-day bench trial on Santander's reformation claim. At the close of Santander's case, the defendants moved for a directed verdict on the ground that Santander had failed to demonstrate that it properly held the mortgage at issue. The trial court denied that motion, explaining that "[t]here has never been a dispute in this litigation, that Santander . . . is the proper successor to the loan and mortgage issued to NE Moves . . . on December 7, 2007," and observing that the court had granted summary judgment to Santander on its equitable subrogation claim "as successor-in-interest to the mortgage at issue."

2

Thereafter, in a narrative order, the trial court ruled in Santander's favor on the reformation claim. In so ruling, the court observed that Santander had "meticulously submitted documentation that overwhelmingly contradicts [the defendants'] story that they believed that they were only signing the paperwork in their individual capacit[ies]." The court termed the defendants' testimony on this subject "nonsensical" and described the defendants as "simply not credible." The court observed that neither defendant "fell off the proverbial turnip truck." The court found that both defendants are "well-educated and familiar with the world of finance" in that Currivan "has a master's degree in international studies, was a real estate agent, and was involved in international banking for 10 years," and Day has a master's in business administration, has completed the course work for a doctorate degree, describes himself as an economist, and has taught master's-level courses in economics and statistics.

The court found "clear and convincing—indeed overwhelming—evidence" that the defendants "have taken advantage of a scrivener's error to prolong the loss of their home by concocting this distinction between granting a mortgage in their individual capacity, as opposed to on behalf of their trusts." The court explained:

> [The defendants] both wanted this loan from the bank for home improvement projects. They both knew that they could not get the loan without granting the lender a security interest in the Property. They both admitted that they were aware that if they did not repay the loan, the bank could foreclose on the Property. They have not made a single payment toward the loan since 2010. . . . At the time of the closing on December 7, 2007, all parties to this mortgage transaction intended for NE Moves to have an enforceable security interest in the Property. In fact, even after the closing[,] when [the defendants] applied for a loan modification in 2011, they acknowledged that [the] loan [was] secured [by their] only residence . . . . In light of these admissions, their effort now to disavow the security interest in the Property is disingenuous.

(Quotation and citations omitted.) This appeal followed.

On appeal, the defendants first challenge the trial court's determination that Santander was entitled to reformation. We will uphold the trial court's findings and rulings unless they are not supported by the evidence or are legally erroneous. Cook v. Sullivan, 149 N.H. 749, 780 (2003). Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id.

"The law is well settled in this jurisdiction that reformation may be granted . . . where the instrument fails to express the intention which the

3

parties had in making the contract which it purports to contain" and that "parol evidence of mistake in reduction of the agreement of the parties to writing may be received, not for the purpose of varying the written instrument, but for the purpose of establishing the mistake and correcting the instrument." Gagnon v. Pronovost, 97 N.H. 58, 60 (1951) (quotation and citation omitted). Reformation of an instrument for mutual mistake requires that the party seeking reformation demonstrate by clear and convincing evidence that: (1) there was an actual agreement between the parties; (2) there was an agreement to put the agreement in writing; and (3) there is a variance between the prior agreement and the writing. A.J. Cameron Sod Farms v. Continental Ins. Co., 142 N.H. 275, 283 (1997). "The credibility of witnesses and the weight to be given evidence are questions to be determined by the trial court." McCabe v. Arcidy, 138 N.H. 20, 28 (1993) (quotation and brackets omitted). "The effect of the trial court's finding as to the parties' agreement is not defeated or lessened because it was reached after a consideration of conflicting testimony." Id. (quotation, ellipsis, and brackets omitted).

The defendants argue that Santander is not entitled to reformation because it was not originally a party to the mortgage. However, as they later correctly acknowledge, as the assignee to the mortgage originally granted to NE Moves, "Santander stands in the shoes of NE Moves" and obtained the rights of NE Moves at the time of the assignment. See YYY Corp. v. Gazda, 145 N.H. 53, 61 (2000). Accordingly, this argument is unavailing.

The defendants next assert that the evidence before the trial court demonstrates that "both sides intended to have [the defendants] execute the mortgage only as individuals . . . ." To the contrary, there is evidence in the record to support the trial court's finding that the parties intended that the defendants would be parties to the mortgage both in their individual capacities and as trustees of their respective trusts. Thus, we uphold the trial court's finding.

The defendants next contend that the trial court applied the wrong legal standard when it ruled in their favor on Santander's summary judgment motion, finding that genuine issues of material fact existed as to their subjective intentions. This argument lacks merit and warrants no further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

The defendants next challenge the trial court's grant of summary judgment to Santander on its equitable subrogation claim. Equitable subrogation "is a broad doctrine, which is given liberal application." Chase v. Ameriquest Mortgage Co., 155 N.H. 19, 27 (2007). "It applies where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor." Id. (quotation omitted). In order for equitable subrogation to apply, the following conditions must be met: (1) the subrogee cannot have acted as a volunteer; (2) the subrogee must have

4

paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others. Id. The propriety of awarding equitable relief rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case. Id. at 24. We will uphold a trial court's equitable order unless it constitutes an unsustainable exercise of discretion. Id.

The defendants argue that equitable subrogation is not appropriate because "Santander did not pay the entire debt to Piscataqua," rather, they assert, "NE Moves paid the debt." This argument is unpersuasive given that as the defendants later concede, as the assignee, "Santander stands in the shoes of NE Moves." See YYY Corp., 145 N.H. at 61.

Finally, the defendants contest the trial court's dismissal of their counterclaim for breach of contract. In reviewing the trial court's grant of a motion to dismiss a counterclaim, our standard of review is whether the allegations in the counterclaimants' pleadings are reasonably susceptible of a construction that would permit recovery. Town of Londonderry v. Mesiti Dev., 168 N.H. 377, 379 (2015). Although we assume the truth of the facts alleged in the counterclaimants' pleadings and construe all reasonable inferences in the light most favorable to them, we will uphold the granting of the motion to dismiss if the facts pleaded do not constitute a basis for legal relief. Id.

The trial court dismissed the defendants' breach of contract counterclaim on ripeness grounds. "Ripeness relates to the degree to which the defined issues in a case are based on actual facts and are capable of being adjudicated on an adequately developed record." Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 455 (2015) (quotation and brackets omitted). Although we have not adopted a formal test for ripeness, we have found "persuasive the two-pronged analysis used by other jurisdictions that evaluates the fitness of the issue for judicial determination and the hardship to the parties if the court declines to consider the issue." Id. (quotation omitted). With respect to the first prong of the analysis, fitness for judicial review, a claim is fit for decision when: (1) the issues raised are primarily legal; (2) they do not require further factual development; and (3) the challenged action is final. Id. "The second prong of the ripeness test requires that the contested action impose an impact on the parties sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." Id. (quotation omitted).

Here, the trial court ruled that the defendants' breach of contract claim was not ripe because it centered upon the adjustable interest rate imposed in January 2013, approximately three years after the defendants defaulted. The court ruled that, given that the defendants had defaulted long before that interest rate became effective and given that they did not allege that the allegedly improper interest rate proximately caused their default, they had

5

failed to demonstrate that imposing the rate caused them "sufficiently direct and immediate" harm as to render the issue proper for judicial review. Id. The court further stated that whether Santander should calculate the defendants' current debt using the One-Year Constant Maturing Treasury Rate or the LIBOR rate "will best be resolved during foreclosure."

The defendants argue that their breach of contract claim is ripe because, given the uncertainty as to whether the One-Year Constant Maturing Treasury Rate or the LIBOR rate applies to their debt, their mortgage is voidable. As the appealing party, the defendants have the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned order dismissing the defendants' breach of contract counterclaim, the defendants' challenges to it, the relevant law, and the record submitted on appeal, we conclude that they have not demonstrated reversible error. See id. We have reviewed the defendants' remaining arguments and conclude that they do not warrant any further discussion. See Vogel, 137 N.H. at 322.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**