NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2021-0361

JEREMY FISKE

v.

WARDEN, NEW HAMPSHIRE STATE PRISON

Argued: June 23, 2022
Opinion Issued: November 16, 2022

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the petitioner.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Zachary L. Higham, assistant attorney general, on the brief, and Sam M. Gonyea, attorney, orally), for the State.

HANTZ MARCONI, J.  The petitioner, Jeremy Fiske, appeals a decision of the Superior Court (Delker, J.), denying his petition for a writ of habeas corpus. The petitioner asserts that the sentencing court exceeded its statutory authority by denying his request during sentencing to grant the option to receive earned-time credit.  See RSA 651-A:22-a, II (2016).  We affirm.

The following facts were recited in the trial court's order or are otherwise contained in the record.  The petitioner was convicted on eight counts of

aggravated felonious sexual assault and one count of possession of child sexual abuse images. In February 2016, the sentencing court imposed three consecutive ten-to-thirty year, stand committed, state prison sentences with the opportunity to have five years of the third sentence suspended, upon successful completion of sex offender treatment. The remaining sentences were "consecutive suspended sentences." The petitioner "specifically requested that the [sentencing c]ourt allow him to earn good time credit to reduce his stand-committed sentences if he completed approved programming at the prison." After hearing argument, the sentencing court denied the request "in light of the egregious nature of [the petitioner's] crimes."

Approximately five years later, the petitioner filed a petition for writ of habeas corpus, asserting that the sentencing court "exceeded its statutory authority" and "violated his right to due process" by denying the option of earned-time credit. The trial court hearing the petition concluded that whether to grant the opportunity to obtain earned-time credit is within the discretion of the sentencing court and that the court's decision on that matter was "not arbitrary or capricious." This appeal followed.

The petitioner's primary argument on appeal is that "the sentencing court lacked the statutory authority to refuse to authorize earned-time credit." (Capitalization omitted.). Put plainly, the petitioner asserts that, when read as a whole, RSA 651-A:22-a (Supp. 2020) does not give the sentencing court the discretion to deny earned-time credit. Resolving this question requires us to engage in statutory interpretation. The interpretation of a statute is a question of law, which we review de novo. Avery v. Comm'r, N. H. Dep't of Corr., 173 N.H. 726, 733 (2020). In matters of statutory interpretation, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Id. We do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent in light of the policy or purpose sought to be advanced by the statutory scheme. Id. Absent an ambiguity, we will not look beyond the language of the statute. Id.

The statute at issue in this case is RSA 651-A:22-a, which provides in pertinent part:

> II. The earned time reductions authorized in paragraph I of this section shall be available to prisoners who were incarcerated on or after the effective date of this section and who have been granted this option by the presiding justice at the time of sentencing. The earned time reductions authorized in paragraph I of this section

2

shall be available to prisoners who were incarcerated prior to the effective date of this section upon recommendation of the commissioner and upon approval of the sentencing court in response to a petition which is timely brought by the prisoner.

RSA 651-A:22-a, II. The petitioner was sentenced after the statute's effective date of September 9, 2014. See Laws 2014, 166:3. The petitioner concedes that, "read in isolation," RSA 651-A:22-a, II "may be interpreted to suggest that sentencing courts have the power to pick and choose, in advance, which prisoners can receive earned-time in the future, and which cannot" but argues that "this interpretation is untenable" when the statute is read as a whole. We disagree.

RSA 651-A:22-a, II contemplates two groups of prisoners: (1) those who were incarcerated prior to September 9, 2014, when the earned-time statute became effective; and (2) those who were incarcerated on or after the effective date. RSA 651-A:22-a, II. Under paragraph II, a prisoner who was incarcerated prior to September 9, 2014 is eligible to receive earned-time credit provided the prisoner: (1) timely files a petition for such a request; (2) the commissioner recommends him or her for earned-time credit; and (3) the request is "approv[ed by] the sentencing court." RSA 651-A:22-a, II. A prisoner who was incarcerated on or after September 9, 2014 is eligible to receive earned-time credit only if the prisoner was "granted this option by the presiding justice at the time of sentencing." Id. We conclude that the language, "who have been granted this option by the presiding justice at the time of sentencing," in RSA 651-A:22-a, II plainly provides the court with the discretion to either grant or decline to grant eligibility to obtain earned-time credit to a prisoner, like the petitioner in this case, who was sentenced on or after September 9, 2014.

In the alternative, the petitioner argues that, having found that RSA 651-A:22-a, II provides the sentencing court with the discretion to decline to grant eligibility for earned-time credit, we should "clarify that [prisoners] initially denied the option to receive earned-time credit may petition the court to grant that option upon the recommendation of the commissioner." At this stage, we decline to "clarify" whether the petitioner could later receive earned-time credit upon the recommendation of the commissioner because the issue is not ripe for our review. Ripeness relates to the degree to which the defined issues in a case are based on actual facts and are capable of being adjudicated on an adequately developed record. Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 455 (2015). Although we have not adopted a formal test for ripeness, we have found persuasive the two-pronged analysis used by other jurisdictions that evaluates the fitness of the issue for judicial determination and the hardship to the parties if the court declines to consider the issue. Id. With respect to the first prong of the analysis, fitness for judicial review, a claim is fit for decision when: (1) the issues raised are primarily legal; (2) they do not

3

require further factual development; and (3) the challenged action is final.  Id. The second prong of the ripeness test requires that the contested action impose an impact on the parties sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage.  Id.

We need not determine whether the issue meets the first prong of the ripeness doctrine, because we conclude that the issue is not "sufficiently direct and immediate" to be appropriate for judicial review.  Id.  Here, the petitioner has not asserted that he has completed any of the qualified programs under RSA 651-A:22-a, I, or that he has received a recommendation for earned-time credit from the commissioner.  At this juncture, it is speculative at best whether the petitioner will complete any of the qualified programs while incarcerated and, if he does, whether the commissioner would recommend him for earned-time credit.  Thus, we conclude that a decision on this issue at this time would not impose a sufficiently direct and immediate impact on the parties such that it is appropriate for judicial review, and we decline to address it.  Id.

In sum, we conclude that RSA 651-A:22-a, II unambiguously gives the sentencing court the discretion, at the time of sentencing, to grant or decline to grant eligibility to obtain earned-time credit.  RSA 651-A:22-a, II; see also Avery, 173 N.H. at 733.  All other issues raised in the notice of appeal, but not briefed, are deemed waived.  State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

HICKS, BASSETT, and DONOVAN, JJ., concurred.