# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2021-0585, <u>Petition of Colonial Green Products Distributors, LLC</u>, the court on June 29, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted to us, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The petitioner, Colonial Green Products Distributors, LLC (Colonial), challenges orders issued by the New Hampshire Insurance Department (Department) responding to Colonial's petition for declaratory ruling. <u>See</u> <u>N.H. Admin. R.</u>, Ins 209.01. We affirm.

I

The following facts are supported by the record. In 2021, Colonial filed a petition for declaratory ruling with the Department. The issues raised in Colonial's petition pertained to an insurance premium audit dispute with respondent Travelers Property Casualty Company of America (Travelers) regarding workers' compensation coverage, and to Colonial's request for access to respondent National Council on Compensation Insurance, Inc. (NCCI) rating manuals and rules (manuals). Colonial's petition presented eight questions:

I. Whether the NCCI rules are incorporated and binding in workers' compensation policies, even though the NCCI rules are "literally inaccessible" to Colonial and other policyholders?

II. Whether the non-disclosure of NCCI rules to policyholders violates RSA 412:1 X which states that the purpose of this chapter is "to protect policyholders and the public against the adverse effects of any policy provision that is not in the public interest or is contrary to public policy."? And/or a violation of RSA 412:5 I, which states, "Every insurer and advisory organization shall file policy forms, endorsements, and other contract language. . . The commissioner may disapprove such form if it contains a provision that does not comply with the requirements of law, is not in the public interest, is contrary to public policy, is inequitable, misleading, deceptive, or encourages misrepresentation of such policy."?

III.    Whether the NCCI rules are part of the "Our Manuals" language contained in the Policy?

IV.    Whether the NCCI rules are administrative rules adopted by the Department of Insurance?

V.    Whether the practice of charging and attempting to collect disputed premiums by incorporating the disputed amounts into a subsequent policy period violates RSA 417:4 XII and/or RSA 417:4 XIV?

VI.    Whether the NCCI Dispute Resolution Process violates RSA 412:5 V and/or RSA 417:4 XVII(d) in that the Process does not provide "reasonable means" to "be heard" considering the NCCI rules are not provided to policyholders?

VII.    If the NCCI rules are incorporated into the workers' compensation policies, and said rules are adopted and approved by the New Hampshire Department of Insurance, is it a violation of policyholders' constitutional safeguards of fundamental fairness and due process rights, under Part I, Article 15 of the State Constitution when said NCCI rules are not provided to policyholders when requested, free of charge in order to [begin] the Dispute Resolution Process?

VIII.    Whether the inclusion of payroll for vacation, sick days and holiday pay into the premium, where there is no exposure for a workers' compensation claim, violates RSA 412:35 whereby "A final premium shall be charged based upon actual exposure existing during the term of the policy coverage."

(Footnote and bolding omitted.)

In response, the Department issued an order determining that: (1) NCCI manuals, which "assist insurers in calculating workers' compensation rates in New Hampshire," apply to workers' compensation policies once the insurer's rates are "approved by the Department," and the manuals are "reasonably accessible to insureds" given the "regulatory framework and Department practices"; (2) NCCI manuals are not administrative rules; (3) the "regulatory framework for rate approval and rate disputes associated with workers' compensation policies, which includes prior approval by the Department, the mandatory auditing process for these policies, and the dispute resolution process with a de novo appeal to the Department, does not involve unfair insurance trade practices"; (4) insureds have "a reasonable means to be heard through the dispute resolution process," including "the ability to request a

2

hearing at the Department if they are not satisfied with rate information provided by NCCI or their insurer"; (5) the "regulatory procedures involved in workers' compensation rate requirements and disputes provide reasonable notice and protections for insureds"; and (6) Colonial's substantive claims about premium collections were not ripe for review because the NCCI dispute resolution process requires that such claims be presented to the New Hampshire Compensation Appeals Board (Board) prior to review by the Department.

Colonial moved for reconsideration, asserting that, inter alia, "[t]he regulatory framework as outlined by the Department's Order is in violation of the contract clause of the United States Constitution, Art. 1, Sec. 10 and the New Hampshire Constitution, Pt. 1, Art. 23" and that the NCCI dispute resolution process approved by the Department violates the due process provision of Part I, Article 15 of the State Constitution. The Department declined to rule on Colonial's constitutional claims and otherwise denied the motion. Colonial's request for our review followed.

II

As a preliminary matter, we address the jurisdictional basis for our review. Colonial filed its appeal pursuant to RSA 541:6, New Hampshire Administrative Rule, Ins 207.04(e), and Supreme Court Rule 10. Appeals from administrative proceedings may be taken under RSA chapter 541 only "[w]hen so authorized by law." RSA 541:2 (2021). We have interpreted the phrase "when so authorized by law" to mean that the provisions of chapter 541 do not provide an appeal from the determination of every administrative agency in the state. Petition of Hoyt, 143 N.H. 533, 534 (1999). Unless some reference is made to chapter 541 in a given statute, an appeal under the provisions of chapter 541 is not authorized by law. Id.

An appeal from the Department "shall be taken only from an order on hearing, or as to any matter on which the commissioner has refused or failed to hold a hearing after application therefor under RSA 400-A:17 . . . ." RSA 400-A:24, I (2018). Once that statutory requirement is met, "[a]ny appeal shall be in accordance with RSA 541." RSA 400-A:24, II (2018). Pursuant to RSA 400-A:17, the commissioner "may hold hearings for any purpose within the scope of this title as he may deem advisable." RSA 400-A:17, I (2018) (emphasis added). The commissioner "shall hold a hearing" if required by any provision of RSA chapter 400-A or "upon written application for a hearing by a person aggrieved by any act or impending act, or by any report, rule, regulation, or order of the commissioner . . . ." RSA 400-A:17, II (2018) (emphasis added). There does not appear to be any requirement in RSA chapter 400-A that a hearing be held on a petition for declaratory ruling, nor does the administrative rule relating to petitions for declaratory rulings require that a hearing be held. See N.H.

3

<u>Admin. R.</u>, Ins 209.  In this case, the Department noted that "Colonial did not request a hearing and there is no right to a Department hearing in this matter."

Although Colonial improperly filed its appeal under RSA chapter 541, we will consider its appeal as a petition for a writ of certiorari.  <u>See</u> <u>Petition of Hoyt</u>, 143 N.H. at 534.  It is "well-established" that, even though the appealing party is mistaken regarding the appropriate appellate remedy, our practice permits consideration of Colonial's appeal as a petition for a writ of certiorari.  <u>Petition of Hoyt</u>, 143 N.H. at 534; <u>see</u> <u>Petition of Maxi Drug</u>, 154 N.H. 651, 655 (2006) (granting certiorari review from a declaratory ruling by the commissioner of the New Hampshire Department of Health and Human Services).  Accordingly, we review the Department's decision to determine whether the Department "acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which could not legally or reasonably be made," or unsustainably exercised its discretion "or acted arbitrarily, unreasonably, or capriciously."  <u>Petition of Hoyt</u>, 143 N.H. at 534 (brackets omitted).

Colonial raises five issues for our consideration.  First, it asserts that the regulatory framework as outlined in the Department's orders violates the contract clause of the Federal and State Constitutions because "all NCCI Rules . . . are not available to policyholders, free of charge."  Second, Colonial argues that the NCCI dispute resolution process violates Colonial's "constitutional safeguards of fundamental fairness and due process rights" under the State Constitution.  It asserts that "[b]y . . . condoning insurer's use of undisclosed NCCI rules and information" for the dispute resolution process, "the Department's actions" violate "all Policyholder's fundamental rights" under the State Constitution and "contravene[] public policy" in violation of RSA 404-C:2, IV, and that "[t]he withholding of NCCI Rules" makes the dispute resolution process "unreasonable" in violation of RSA 412:5, V and RSA 417:4, XVII(d).  Third, Colonial argues that by determining that NCCI manuals apply to the policy, the Department's orders are erroneous as a matter of law, and unjust and unreasonable, because Colonial "is not being afforded the right to obtain <u>all</u> Rules."  Fourth, Colonial argues that the Department's orders are legally erroneous, and "unjust and unreasonable in not addressing a violation of RSA 417:4, XII and XIV concerning Travelers' business practice of 'rolling over' premiums into new policy periods."  (Bolding and capitalization omitted.)  Finally, it argues that the orders are legally erroneous, and unjust and unreasonable, "in not addressing a violation of RSA 412:35 concerning insurers' inclusion of sick, vacation and holiday pay into premiums."  (Bolding and capitalization omitted.)

III

In New Hampshire, workers' compensation insurers must file for the Department's approval "every manual, minimum premium, class rate, rating

schedule, or rating plan and every other rating rule, and every modification of any of the foregoing that it proposes to use" related to workers' compensation rates prior to use in the market. RSA 412:28, I (2022). In doing so, insurers may use the services of an authorized agency organization approved by the Department. See RSA 412:28, I-II; RSA 412:23 (2022). Colonial does not dispute that NCCI is such an authorized agency organization. In New Hampshire, NCCI computes rates based on its rating manuals, which are approved by the Department. See RSA 412:28, I-II; RSA 412:23.

Workers' compensation policies issued in this state are on an auditable basis, such that final premiums charged must be based on "actual exposure existing during the term of the policy coverage." RSA 412:35, I (2022). In support of an audit process, insureds may request from an insurer or NCCI "all pertinent information" related to an insured's rate. See RSA 412:27, I (2022). Such information must be provided if the request is timely and the insured provides payment of a "reasonable charge" for the information. Id.

Colonial "accepts the statutory framework governing the existence of NCCI and interplay with the Department in developing insurance policy forms and worker classification rates." Nonetheless, Colonial challenges the Department's interpretation of the regulatory framework as violating the Federal and State Constitutions. The main premise underlying Colonial's arguments is that NCCI manuals are "not available to policyholders, free of charge," are "undisclosed," are "being withheld," and are "conceal[ed]." Thus, according to Colonial, "[t]he Department's statutory interpretation in finding [that] the undisclosed NCCI Rules are applicable to" its policy with Travelers "violates Article 1, section 10 of the Federal Constitution and Part I, Article 23 of the New Hampshire Constitution." Further, Colonial asserts that by "condoning insurer's use of undisclosed NCCI rules and information" for the dispute resolution process, the Department violates Part I, Article 15 of the State Constitution based on due process and fundamental fairness grounds.

The Department declined to address Colonial's constitutional arguments. The Department noted that Colonial's petition "repeatedly invite[d]" the Department "to ignore the administrative laws and procedures set forth by the Legislature" pertaining to rate approvals, the audit process, the procedure for insureds to obtain pertinent rate information, including NCCI manuals, and the applicable dispute resolution process outlined in the NCCI manuals approved by the Department. The Department reasoned that Colonial's request was "well beyond the scope" of a petition for declaratory ruling under New Hampshire Administrative Rule Ins 209.01 because, "rather than questioning the applicability of one particular rule or statute in a declaratory ruling proceeding," Colonial "assert[ed] constitutional arguments as grounds for replacing the current regulatory framework set forth under New Hampshire law."

"Any person may request a declaratory ruling from the department on matters within its jurisdiction." N.H. Admin. R., Ins 209.01. A "[d]eclaratory ruling" means "an agency ruling as to the specific applicability of any statutory provision or of any rule or order of the agency." RSA 541-A:1, V (2021); N.H. Admin. R., Ins 202.01(g). The petition shall be rejected if it is "beyond the scope of the commissioner's statutory authority." N.H. Admin R., Ins. 209.02(c)(2)(d). The Department explained that it is a regulatory agency with "oversight of its licensees' activities" outlined by the legislature, which includes "approval of workers' compensation rate calculations prior to use in the market; how these policies are audited to ensure that premiums are based on actual exposure during a policy term; and the process by which an insured may seek pertinent information relating to workers' compensation rate information when there is a rate dispute." Given its regulatory authority, we agree with the Department that Colonial's request that it declare unconstitutional the application of the statutory framework exceeded the scope of a declaratory ruling pursuant to Ins 209.01. Colonial does not challenge the Department's determination on that issue.

Moreover, the Department rejected Colonial's underlying assertion that NCCI manuals are "not available." The Department determined that information contained in the manuals is accessible: (1) in full by subscription for $1,600; (2) by statutory right for a reasonable charge pursuant to RSA 412:27; (3) through the Department, which "regularly provides insureds relevant information from the Manuals related to workers' compensation rates"; and (4) by reviewing "an entire, paper copy" of the manuals at the Department. As the Department found, in 2019 the Department provided to Colonial "over 100 pages" of the manuals "pertaining to the insurer's audit, the dispute resolution process, and premium rate guidelines" relative to the workers' compensation rate issue in dispute in this case and, since 2019, Colonial "knew that it could review the entire copy of the Manuals at the Department." Colonial does not dispute the Department's findings.

Colonial also asserts that "the Department's orders committed legal error" and were "unjust and unreasonable" in not addressing the merits of Colonial's claims concerning Travelers' practice of "rolling over" premiums into new policy periods and Travelers' inclusion of sick, vacation and holiday pay into premiums. (Bolding and capitalization omitted.) As the Department explained, however, the regulatory framework includes the NCCI dispute resolution process that has been approved by the Department. See RSA 412:5, I. Because Colonial has not engaged in that process, the Department determined that these issues were not ripe for review by the Department. We find no error. See Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 455 (2015) (explaining that "ripeness relates to the degree to which the defined issues in a case are based on actual facts and are capable of being adjudicated on an adequately developed record" (quotation and brackets omitted)).

We conclude that the Department did not act "illegally with respect to jurisdiction, authority or observance of the law," or unsustainably exercise its discretion or act "arbitrarily, unreasonably, or capriciously."  Petition of Hoyt, 143 N.H. at 534.  We have reviewed Colonial's remaining arguments and determine that they lack merit and do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).  Accordingly, we affirm.

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**